PHILANDO ARMSTRONG V. A. B. MOORE *et al.*

CONDEMNATION PROCEEDINGS—*Rights of Mortgagee.* F., being the owner in fee simple of a town lot in the city of Kingman, gave a mortgage to the Kansas Loan and Investment Company to secure the sum of $700 on said town lot, due in five years, and said mortgage was duly assigned to A. The Hutchinson, Oklahoma & Gulf Railway Company duly applied to the board of county commissioners of Kingman county to lay off its route for railway purposes through said county, and thereafter such proceedings were had by the board of county commissioners as are authorized by law, and in the location of such right-of-way the entire lot so mortgaged was taken as right-of-way, and the board of county commissioners found that F. was the owner thereof, and appraised the value of the lot at $1,250, and awarded the same to F. as owner. After the board of commissioners had concluded the laying out of such route, it embodied its doings in a report in writing, and filed it with the county clerk of said county; and the county clerk forthwith made a copy of such report, and filed it in the office of the treasurer of said county, and the railway company thereupon deposited with the county treasurer the amount of such award in full; and the county treasurer has paid out the money so deposited to the persons designated in the report of the board of county commissioners as the owners, and to whom the awards were made. A. did not intervene in the condemnation proceedings, or in any other manner, nor present his claim for the award until the same had been paid out by the treasurer to F., the owner of the fee, and to whom the award had been made. *Held,* That A. cannot maintain an action against the treasurer and his bondsmen for the recovery of the money due him on said mortgage.

MEMORANDUM.—Error from Kingman district court ; S. W. LESLIE, judge. Action on an official bond by Philando Armstrong against A. B. Moore and others. There was a judgment for defendants on a demurrer to the petition, and plaintiff brings error. Affirmed. The opinion herein was filed June 19, 1895.

The statement of the case, as made by JOHNSON, P. J., is as follows :

This action was commenced by Philando Armstrong

against A. B. Moore, as treasurer of Kingman county, and the other defendants as sureties on the bond of said treasurer. The plaintiff alleged in his petition that on the 1st day of September, 1888, the defendant, Benjamin F. Frazier, executed a certain promissory note to the Kansas Loan and Investment Company for the sum of $700, due five years' after date, with interest at 7 per cent. per annum if paid according to the tenor and effect thereof, with coupons attached, but if not so paid, to draw 12 per cent. per annum ; that said note was assigned by the Kansas Loan and Investment Company to the plaintiff, Armstrong, before due. A copy of the note is attached to the petition. Plaintiff also alleges the execution of a mortgage on certain real estate in Kingman county, Kansas, to secure the payment of the note ; that no part of the principal or interest has ever been paid, and that the same is due. He also alleges that in March, 1890, the Hutchinson, Oklahoma & Gulf Railway Company, a company authorized to construct a road from Hutchinson to Oklahoma, on the 1st day of March, 1890, instituted condemnation proceedings to condemn its right-of-way through Kingman county ; and in laying out the route of said railway through Kingman county and condemning the right-of-way it took and appropriated the entire tract of land mortgaged to secure the payment of said note ; that in the condemnation of said land it was appraised at $1,250, and that on the 10th day of May, 1890, the railway company, under said condemnation proceedings, paid to the defendant, A. B. Moore, who was then the treasurer of Kingman county, Kansas, the full appraised value of said land, to wit, $1,250 ; and that on the same day the money was deposited with the treasurer, who paid it out to the defendant, Benjamin F. Frazier, on account of being the

owner of said land, and that at the time of the payment of Moore to Frazier, Moore had full notice and knowledge of the mortgage of the plaintiff to said land. The petition further alleges that Moore was the duly-elected, qualified and acting treasurer of Kingman county, and that the other defendants were sureties on his bond as treasurer of said county; that said bond was duly approved and filed with the county clerk of Kingman county, and that said Benjamin F. Frazier is and was on the 10th day of May, 1890, insolvent. Plaintiff prays judgment against all the defendants for the sum of $700, with interest according to the terms of the note. To this petition the defendant interposed a demurrer, on the ground that the petition does not state facts sufficient to constitute a cause of action. The demurrer was sustained by the court, and, plaintiff electing to stand on his petition, judgment was rendered against him for costs of suit. A motion to set aside the judgment and grant a new trial was filed and overruled by the court, and excepted to.

*Edwin White Moore,* and *F. W. Bentley,* for plaintiff in error.

*James F. Steck,* for defendants in error.

The opinion of the court was delivered by

JOHNSON, P. J.: The record in this case presents but one single question — as to whether the petition of plaintiff states facts sufficient to constitute a cause of action, and whether the county treasurer became liable to plaintiff as mortgagee for the sum secured by the mortgage upon the facts alleged in the petition. It is alleged in the petition of the plaintiff that on the 1st day of March, 1890, the Hutchinson, Okla-

homa & Gulf Railway Company, a duly chartered and
organized railway corporation, proposed to construct
its road through Kingman county, Kansas, and at the
same date applied to the board of county commission-
ers of Kingman county to lay off along the line of its
proposed road in said county, as located by said com-
pany, a route for said proposed railroad not exceeding
100 feet in width, and also such lands as might be
deemed necessary for side-tracks, depots, workshops,
water-stations, etc.    Said board of county commis-
sioners of Kingman county, on or about the 1st day
of March, 1890, proceeded to lay off said route over
and upon such land as was necessary for said railway
company as set forth in the application therefor, and
caused the land for said purposes to be carefully sur-
veyed, and ascertained the quantity of land necessary
for said purposes out of each quarter-section and other
lot of land over which said route was located, and
duly appraised the value of each quarter-section and
other lot of land desired by said railway company
and assessed the damages accruing to each quarter-
section and other lot of land so desired ; that prior to
said action of said board of said county commission-
ers a notice of the time when said proceedings should
be commenced was given by the board of county com-
missioners by the publication thereof, for 30 days prior
to the time fixed for commencing such proceedings, in
the Kingman *Leader-Courier*, a newspaper published in
said county of Kingman, stating the time and place of
meeting for the purpose of laying out such route and
appraising the value of each quarter-section and other
lot of land desired for right-of-way ; that under such
notice the board of county commissioners met at the
time and place designated in said notice and proceeded
to lay off a route along the line proposed by the rail-

road company; and, after having concluded their
work in laying off such route and ascertaining care-
fully the quantity of land necessary for the purposes
of said railroad out of each quarter-section or other
lot of land through which said route was located, ap-
praised the value and assessed the damages thereto
and the damage to each owner's interest, on the 10th
day of May, 1890, they made out their report in writ-
ing, embodying their proceedings therein, and duly
filed the same in the office of the county clerk of said
county; that said county clerk forthwith on said day
prepared and filed in the office of the treasurer of King-
man county a copy of said report; that the piece of
land mortgaged as aforesaid was wholly included in
the limit of the route of said railway company, as lo-
cated by said company and surveyed, appraised and
assessed by the board of county commissioners, and
in said report said land was designated as owned by
the defendant, Benjamin F. Frazier, and all of said
piece of land was reported by said board of county
commissioners in said report as necessary for the pur-
poses of said railway company; that said board of
county commissioners duly appraised the value of
such piece of land at the sum of $1,250; that on the
same day the railway company, pursuant to the pro-
ceedings aforesaid, duly paid the defendant, A. B.
Moore, as treasurer of Kingman county, the said sum
of $1,250, for and on account of said appropriation of
said described piece of land for the purpose of said
railway; that the said defendant, A. B. Moore, was
the duly-qualified treasurer of Kingman county, and
on the same day, as such treasurer, he paid the said
sum of $1,250, received by him as treasurer from said
railway company, to the defendant, Benjamin F.
Frazier, because Frazier was the owner of said piece

of land; that at the time of such payment by said Moore to the said Frazier the said Moore had full notice and knowledge of the mortgage of said plaintiff on said land. And plaintiff further alleges that the other defendants are sureties on the bond of said A. B. Moore as treasurer of said county.

Section 235 of article 9 of chapter 23 of the General Statutes of 1889 (¶ 1391) provides:

"Upon application being so made in writing, such board of county commissioners shall forthwith proceed to lay off such route, side-tracks, etc., for such distance through their said county as may be so desired, and of such width, within the limits aforesaid, and upon such location as may be desired by such corporation, having the same carefully surveyed, and ascertaining carefully the quantity of land necessary for such purposes out of each quarter-section or other lot of land through which said route, side-tracks, etc., is so located, and appraise the value of such portion of any such quarter-section or other lot of land, and assess the damages thereto; and when such commissioners shall ascertain that such portion of such quarter-section or lot belongs to different owners, they shall appraise the value and assess the damages of each owner's interest; all which doings the board of commissioners shall embody in a written report, and file in the office of the county clerk of such county."

Section 236 provides:

"Such county clerk shall forthwith prepare and file in the office of the treasurer of such county a copy of such report; and if such company shall cause to be paid to such treasurer the amount in full of such appraisement, within 90 days of the time of filing such copy in such treasurer's office, such treasurer shall thereupon certify such fact upon the copy of the report, under his hand and seal of office, and shall, upon demand of the persons severally entitled thereto,

pay over the amounts of such fund to such persons as shall be respectively entitled thereto."

Before a board of commissioners shall proceed to lay off any railroad route as provided in this chapter, notice of the time when the same shall be commenced shall be given by publication 30 days before the time fixed in some newspaper published in such county; and it provides the manner in which the commissioners shall proceed to lay out the right-of-way, and also for an appeal from the award of the commissioners in the appraisement of the land and assessment of damages. It is alleged that the proceedings in the condemnation of the right-of-way were all regular, and that the Hutchinson, Oklahoma & Gulf Railway Company obtained the right-of-way through the county of Kingman, and that in the laying out of the route for said railway company the entire tract of land covered by the mortgage of the plaintiff was appropriated as right-of-way to said railway company; that due notice of the proceedings was given by publication; that the award was made to Benjamin F. Frazier, as the owner thereof; that the mortgagee never attempted to subject the award as a fund in equity to his claim, and never received any portion of the same, or had any benefit therefrom; that the entire amount was paid over to the said Benjamin F. Frazier.

In the case of the *C. K. & W. Rld. Co. v. Sheldon*, 53 Kas. 172, Johnston, J., delivering the opinion of the court, says :

"The general notice by publication is sufficient, and, when legally made, all persons who have an interest in the lands must take notice of the subsequent proceedings, whether they are named in the notice or not. If any owner is dissatisfied with the award when it is made, he may protect his interests by taking an appeal. When the award is paid into the county treas-

ury, anyone having an interest in the land or a claim upon the fund may take proceedings to protect his interest or claim. The mortgagee, however, had only a lien upon the land out of which the right-of-way was taken. He was not an owner of the same, nor the owner of an estate therein. Not being an owner within the meaning of our statutes, it was not necessary to name the mortgagee in the proceedings, nor to make the award to him. When full compensation was awarded for the right-of-way and the award was deposited with the county treasurer, a title to the right-of-way was obtained by the railroad company, as against the owner, as well as any others who may have had liens upon the land. The mortgagee is not without protection, as, having had notice by the publication, he may, where equity requires, resort to the fund awarded for the right-of-way.''

But if he does not appear and demand that his equities be protected before the money is paid over to the owner of the land to whom the award is made, he cannot have a claim upon the treasurer who has paid the money out according to the person named in the award of the commissioners. In the case of *Railroad Co. v. Wilder*, 17 Kas. 246, Mr. Justice VALENTINE, speaking for the court, says :

'' We think Wilder is entitled to the same damages as though he owned the unencumbered fee of the land. DaLee is not entitled to any portion of such damages ; DaLee is entitled to the $2,000 which Wilder owes him, and to nothing more, except that he holds the legal title to the land ( and possibly a lien on the damages awarded, if he chooses to assert such lien,) as a security for his claim on Wilder.''

In the case of *Kuhn v. Freeman*, 15 Kas. 427, Mr. Justice VALENTINE, delivering the opinion of the court, says :

'' When the right-of-way was established, it was in fact obtaining an easement on the land of the widow

and children of said Hamaker and not upon the land of Weisbach, and they were entitled to receive the money paid by the railroad company as damages. And Hamaker's estate remained liable to the holder of the notes just as it was before for the balance of the purchase-money not yet paid on the notes."

In the case of *Goodrich v. Comm'rs of Atchison Co.*, 47 Kas. 360, a public highway was laid out over a quarter-section of land in Atchison county owned by Silas H. Hamilton and Frances B. Hamilton, upon which they had given a mortgage to Alexander M. Sutherland, and the mortgage was afterward foreclosed in the United States circuit court and the mortgaged property sold by a master in chancery, and bought in by Goodrich. Damages for the location of the highway having been assessed in favor of T. C. Beard, as the agent for the Hamiltons, aggregating $350, and the same having been paid to T. C. Beard, as agent of the Hamiltons, Goodrich afterward, as purchaser of the land at the master's sale, commenced his action against the board of county commissioners of Atchison county to recover the damages awarded for the right-of-way over said land. All the facts in relation to the execution of the mortgage, the foreclosure and sale of the land and the purchase by Goodrich at the master's sale, the award of damages and the payment of the same to T. C. Beard, were all set out in the petition of the plaintiff, and on the trial of said cause an objection to any evidence under the petition for the reason that it did not state facts sufficient to constitute a cause of action against the defendants was sustained, and judgment rendered in favor of the defendant, and the judgment was affirmed by the supreme court. Mr. Commissioner STRANG, delivering the opinion of the court, says :

" 'It shall be the duty of at least one of the peti-

tioners to cause six days' notice to be given in writing to the owner or owners, or their agents, if residing in the county through whose land such road is to be laid out and established, of the time and place of meeting as specified in the notice of the commissioners.' (Gen. Stat. of 1889, ¶ 5477.) The notice of the commissioners· is pointed out in ¶ 5476 of the same statutes, and requires the county clerk ' to give notice by advertisement set up in the county clerk's office and every municipal township through which any part of said road is designated to be laid out, for at least 20 days, and by publication for two consecutive weeks in a newspaper, if there be one published in the county, setting forth that such petition has been presented, giving the substance thereof, and that viewers will, on the day designated, proceed to view said road and give all parties a hearing.' In view of the statute in our state in relation to notice in road proceedings and the law relating to mortgages and rights of mortgagors and mortgagees, we do not think it was necessary to serve notice on the plaintiffs for the purpose of establishing the road which was laid out across the lands upon which they at the time held a mortgage. There is nothing in our statutes that requires service of notice upon anyone in such proceeding except the 'owner.' It has been seen that in our state the mortgagee of land is not the owner thereof. The mortgagor holds the legal title, and, in the absence of stipulations to the contrary, the right of possession. He is regarded as the owner of the land, and when in possession by himself or agent, notice to him or his agent is, in proceedings to establish a public road, notice to the 'owner' to the full intent of our statute requiring such notice."

In the case of *Schemerhorn v. Peck,* 43 Kas. 667, in which Peck foreclosed a mortgage upon certain lands in Cowley county through which the right-of-way of the El Dorado & Walnut Valley railroad had been laid out, and damages were awarded to the owner of the fee, and were paid over to Jennings & Troup, the

attorneys for the owner, and a motion and supplemental motion were made to require Jennings & Troup to pay the money to the mortgagee, Mr. Justice JOHNSTON, delivering the opinion of the court, says:

"The money sought to be reached was not a fund within the jurisdiction of the court in the foreclosure proceedings. . . . There was no effort by Schemerhorn to interplead in the condemnation case, nor did she by any pleading in the foreclosure action ask that the money awarded or to be awarded in the condemnation case should be held as a fund for the satisfaction of the mortgage. Doubtless the mortgagee could have filed supplemental pleadings in the foreclosure case, bringing all the parties directly connected with the award made or to be made into court, setting forth the facts respecting the condemnation proceedings and the necessity that the money be paid for right-of-way should be held as a fund for the satisfaction of the mortgage, and thus have reached the end sought in this motion. . . . No effort of any kind was made to control or reach the fund until some time after the money had been awarded and paid. The steps taken were ineffectual. It was not a fund within the jurisdiction of the court in the foreclosure action, and the court rightly denied the motion."

The *United States v. Dunnington*, 146 U. S. 338, was an appeal from the court of claims, in which proceeding it was claimed that certain lots in the city of Washington, D. C., formerly belonging to Charles W. C. Dunnington, the ancestor of the claimant, in June, 1863, had been seized and confiscated under the confiscation act of July 17, 1862, and duly condemned as enemy's property and exposed to public sale, and that A. R. Shepherd became the purchaser and entered into the possession. In 1872 proceedings were commenced in the supreme court of the District of Columbia, at the instance of the United States, for the

acquisition of the land to enlarge the grounds around the capitol, in which contemplated enlargement said lots were included, and such proceedings were had that resulted in the condemnation of the lots by commissioners, and the commissioners filed their report, finding the cash value of said lots, and said appraisement was duly approved, and, the owner failing to appear and demand the award of damages, the amount of the appraisement was filed with the court by the secretary of the interior.   This property had in the meantime been transferred by Shepherd through several intermediate conveyances to Martin King, and King had died, and on the 3d day of April, 1873, upon petition of the heirs of Martin King, the amount of the appraisement of the lots, amounting to $9,858, was, by order of the court, paid over to the attorney of the heirs of said King.   By the proceedings for the confiscation of the property of Charles W. C. Dunnington he was divested of all right or title to the lots during his lifetime, but upon his death the forfeiture of the property determined, and the fee simple at once vested in the claimant as heir-at-law; but by the condemnation proceedings the title of all parties was divested, and the appraised value of the property took the place of the property and was held by the court for the use and benefit of the owner or owners of the property, and the amount awarded by the commissioners to the owners of the property having been paid out to the grantees of Shepherd, the purchaser at the sale of the lots, this claimant instituted proceedings for a recovery of the appraised value of the lots from the United States.   Brown, J., delivering the opinion of the court, says:

"A further question remains to be considered with regard to the proceedings taken after the payment of

the money into court. It is insisted by the claimant that it was the duty of the United States, as the plaintiff in the condemnation proceedings, to take proper steps for the payment of the sum fixed by the appraisers to the persons entitled thereto, by apportioning the sum between the tenants of the life estate and the heirs of Dunnington, or by the investment of the entire amount in interest-bearing securities for the benefit of the tenants of the life estate until its termination, and for the ultimate delivery of the same to the heirs. It is a necessary deduction from our conclusion upon the other branch of the case that the appraisement of the property represents the whole fee and the interest, both present and prospective, of every person concerned in the property; and such are the authorities. (*Canal Co. v. Archer,* 9 Gill & J. 479–525; *Ross v. Adams,* 28 N. J. Law, 160.) The money, when deposited, becomes in law the property of the party entitled to it, and subject to disposal of the court. . . . It is evident that the gist of the petitioner's complaint in this connection lies in the order of the supreme court of the District of Columbia of April 3, 1873, directing the payment of the entire appraised value of the lots to the heirs of Martin King, the vendee of Shepherd who had purchased the life estate of Dunnington under the confiscation proceedings. Neither Dunnington, who was still living, nor his heirs, the present claimants, appear to have intervened in the condemnation proceedings, or to have raised a question as to the propriety of this payment. The proceedings, however, appear to have been carried on in strict conformity with the act which required the secretary of the interior, in case he should be unable to purchase at private sale, to apply to the court for an appraisement, and in case the owner neglected to demand of him the appraised value within 15 days, to pay the same into court subject to being paid out to the persons entitled to it. Assuming that the payment of the entire amount to heirs of King was a mistake, it is difficult to see how the United States can be held responsible for it. The courts are in no

sense the agencies of the federal government, nor is the latter liable for their errors or mistakes. They are independent tribunals, created and supported it is true by the United States, but the government stands before them in no other position than an ordinary litigant."

In *Crane v. City of Elizabeth*, 36 N. J. Eq. 339–343, it was held that the compensation fixed for the taking of certain lands for streets was to include the value of all the interest, and was to be paid to the owner of the land if no other claimant intervened; and that if in any case such owner ought not to receive the whole, timely resort must be had to the court of chancery, which would see to the equitable distribution of the fund. The court said:

"The price to be paid by the city is to be the full value of all rights which may be impaired for the public benefit, and this is to be ascertained only after notice, not specially to individuals who alone may appear to guard their claims, but generally, by the publicity which attends the doings of the council and by newspaper advertisements which may reach all alike, and under which all may be protected. The action of the city authorities has thus the distinctive qualities of a proceeding *in rem*, a taking, not of the rights of designated persons in the thing needed, but of the thing itself, with a general monition to all persons having claims in the thing. When, by the appraisement of the commissioners, the price of the thing is fixed, that price stands instead of the thing appropriated, and represents all interests acquired. . . . But if, in any special case, this owner ought not, in equity, to receive the fund, the court of chancery will, at the instance of any interested complainant, take charge of its proper distribution, and so secure those particular equities which the generality of the statute has left without express protection."

Article 9 of chapter 23 of the General Statutes of

1889 prescribes the proceedings for acquiring the right-of-way for railway companies, and fully and particularly sets out and defines the duties of the commissioners ; and under the proceedings for acquiring the right-of-way by exercise of the right of eminent domain the commissioners are required to give public notice by advertisement in some newspaper published in the county, and of general circulation therein, where the proceedings are to be had. The object of this publication is to notify all persons interested in any property to be affected by the taking and appropriating of property along the line of the proposed railway, so they may appear and present their claims to the commissioners, so as to inform them of their claim, if any, as they proceed with the laying out of the route, and in the appraisement of the value and the assessment of damages, and to present to the commissioners whatever interest such person has in the several quarter-sections or other lot of land to be affected by the location of the route. The commissioners are authorized to determine who the owner of each tract of land is through which the right-of-way is located, and to determine the interest of each owner or claimant thereto, and are required to appraise the value and assess the damage to each of such owner's interest ; and, after they have ascertained carefully the quantity of land necessary for the purpose of the right-of-way out of each quarter-section or other lot of land and appraised its value and assessed the damage thereto and determined the interest of each owner and appraised the value and assessed the damage to each owner's interest, they are required to embody their findings in a written report and file the same in the office of the county clerk of the county where condemnation is had, and the county clerk shall forth-

with prepare and file in the office of the treasurer of such county a copy of such report; and, if the railway company shall cause to be paid to such treasurer the amount in full of such appraisement within 30 days of the time of filing such copy in such treasurer's office, such treasurer shall thereupon certify such fact upon the copy of the report, under his hand and seal of office, and shall, upon demand of the persons severally entitled thereto, pay over the amounts of such funds to the persons respectively entitled thereto. The finding contained in the report of the commissioners is the only means the treasurer has of determining who are the persons entitled to the funds in his hands, and he should pay it out according to the award of the commissioners. The commissioners appraise the interest of the owner of each quarter-section or other lot of land, and determine the damage sustained by the owner of each quarter-section or other lot of land appropriated, and the railway company deposits the money with the treasurer to pay the awards of the commissioners; and if the persons to whom the awards are made are not entitled to receive the same because of some equitable reason, the person or persons who are entitled in equity to receive the money on deposit should come forward while said condemnation proceedings are pending and present their claims to some court of competent jurisdiction, and obtain in some proper proceeding an order for the equitable distribution of the fund. The party claiming the fund should commence his proceedings before the treasurer has paid it out in accordance with the direction in the report of the commissioners. Where a party stands by and sees the right-of-way of a railway through the county condemned, when he ought to know that it will affect lands that he has some interest in, either

30—APP.

legal or equitable, until the commissioners have completed their work and filed their report, and the company made its deposit in accordance with such report, and the treasurer has paid out the money deposited to the parties whom the commissioners have found to be the owners and awarded the compensation to them, he will not be heard to complain of the payment by the treasurer of the money to the wrong party. Equity requires a party, when proceedings are being had by those authorized to act whose acts may affect his right, to make his claim known, if he has any, and if he does not speak when he should speak, to protect his own right, he will not be heard when he does speak. The defendant having paid out the money deposited by the railway company as the appraised value of the mortgaged premises to the party designated in the report of the commissioners as the owner of the lot and the person entitled to the value of the same, and the plaintiff not having made any claim during the condemnation or before by setting up his equities to the fund awarded or to be awarded, nor presenting any claim to the fund in the hands of the defendant until after it has been paid out by the treasurer, he cannot recover from the treasurer and his sureties the amount due him on his note and mortgage ; and the demurrer to the petition was properly sustained.

The judgment of the court in sustaining the demurrer to the plaintiff's petition is affirmed.

All the Judges concurring.