[No. 7663.   Decided April 6, 1909.]

L. A. GASAWAY, *Respondent*, v. THE CITY OF SEATTLE, *Appellant*.[1]

EMINENT DOMAIN—PROCEEDINGS—PROCESS—WAIVER OF OBJECTIONS TO SERVICE. In eminent domain proceedings by a city, objection to the sufficiency of the service of process upon the owner will not be considered after the assignee of the owner has accepted and received the award of compensation for the land taken.

EMINENT DOMAIN—NATURE—STRICT PUBLIC USE—EFFECT—TAXATION—DISCHARGE OF TAX LIEN. The power to condemn land for the use of the state being an attribute of sovereignty, recognized, not granted by the constitution, the state may provide for condemnation for a strict, as distinguished from a quasi public use, that will discharge the land from liens for unpaid taxes.

EMINENT DOMAIN—PROCEEDINGS—NECESSARY PARTIES. A proceeding to condemn property is *in rem*, and the only necessary parties are those named by the statute.

SAME — "PERSONS INTERESTED" — COUNTY HOLDING TAX LIEN — STATUTES—CONSTRUCTION. Under Laws 1903, p. 189, providing that a condemnation by a city of the first class shall proceed against the owners and occupants of the land and "persons having an interest therein so far as known to the officer filing the petition or appearing from the records in the office of the county auditor," a county having a lien for taxes assessed and unpaid is not a necessary party defendant, since the city is not obliged to go beyond the knowledge of its officer and the county auditor's records, and the county is not a "person interested" within the meaning of the act.

TAXATION—VESTED RIGHTS—PUBLIC PROPERTY—DISCHARGE OF LIEN BY EMINENT DOMAIN PROCEEDINGS. As there can be no vested right to enforce the collection of taxes, and as public property is not subject to taxation, a county cannot enforce a tax lien against property after it is relieved therefrom by the state's taking the same over as public property under eminent domain proceedings.

[1]Reported in 100 Pac. 991.

Appeal from a judgment of the superior court for King county, Tallman, J., entered April 25, 1908, upon findings in favor of the plaintiff, after a trial on the merits before the court without a jury, in an action to recover real property and to quiet title.  Reversed.

*Scott Calhoun* and *Bruce C. Shorts,* for appellant.

*Louis Henry Legg* and *A. C. McDonald,* for respondent.

CHADWICK, J.—Plaintiff brought this action to recover from defendant, the city of Seattle, certain lands held by it under condemnation proceedings.  The land sought to be recovered consists of three tracts, and together they comprise a part of the right of way and water-shed acquired by the city in connection with its Cedar river water system.  One of these tracts was acquired by condemnation proceedings in July, 1896; the others by like proceedings in 1901.  In each case the value of the property as assessed by a jury was paid into the office of the clerk of the superior court.  The assignee of the owner received, receipted for, and accepted as compensation, the amount so found to be due.  Because of these facts we shall not consider the sufficiency of the service upon the owner of the property, although the point was raised by plaintiff upon the trial by objection to the introduction of testimony.

At the time the condemnation suits were prosecuted in the lower court, there had been levied taxes which were then due, delinquent, and unpaid.  In one of the condemnation suits the county of King was made a party, and service was had upon the county auditor.  In the other it was not made a party, and so far as the record shows it had no actual notice of the condemnation suits.  Thereafter King county brought an action to establish and foreclose its lien for taxes, and after the usual proceedings the treasurer of King county deeded the several tracts of land, a part of which the city had condemned, and was then in possession of, to plaintiff's grantor, who on October 4, 1904, conveyed all his interest in the land

to the plaintiff. The lower court made findings in favor of the plaintiff, and entered judgment "that the claim to ownership of the said lands and every part thereof of the defendant is without right, and the title to said lands and every part thereof is hereby quieted and set at rest in the plaintiff against every claim of the defendant or any one claiming by or through it;" from which judgment defendant has appealed.

The only question for us to decide is whether the tax lien of the county of King is superior to the right of the city of Seattle to condemn and take property for a public use. Appellant takes the position that, in the acquisition of land for public use, no greater duty is put upon it than is expressly provided in the statute. Chapter 84, Laws 1893, p. 189, governing condemnation suits by cities of the first class, provides (§ 4) that actions prosecuted under its provisions shall proceed in the names of the owners and occupants of the lands and all persons having an interest therein. It is apparent that the legislature took no concern of a tax lien, or if it did, the city insists that, by virtue of the condemnation proceedings which it strictly complied with, it took the property discharged of all claims and liens whatsoever, including that of the county, and if a lien for taxes survived, it attached to the fund paid into court as compensation for the land taken. In the case of *Puyallup v. Lakin*, 45 Wash. 368, 88 Pac. 578, this court held that personal property acquired by the city of Puyallup by purchase was liable for a tax that had been assessed before the city acquired its title.

"The second contention, that the property is not taxable because devoted to public use, we think cannot be sustained. If the property had a lien upon it when it was purchased by the municipality, the municipality like an individual would take the property subject to the lien. The collection of the tax might be an idle thing if all the assessment that was due on the property would go to the municipality, but such is not the case. A portion of the money is due to the state, a portion to the county, and a portion to the school district,

and such incorporations are entitled to their share of the money due."

The lower court followed that case, and were it not for the act of 1893, which seems to grant a greater power to, as well as confer a greater benefit upon, cities of the first class, to which it is made applicable, than it does to *quasi* public corporations exercising the right of eminent domain, we would be inclined to hold that case controlling. This case seems to be one of first impression, and a recurrence to fundamental principles is necessary to fully elucidate the distinctions which we shall draw between it and the *Puyallup* case. The power to condemn land for a public use is in the state of Washington. If it is exercised by others, it must be by reason of some constitutional or statutory provision. It is not so with the state. The power to condemn land is an attribute of sovereignty. "It is a power recognized, not granted, by the constitution." *Samish River Boom Co. v. Union Boom Co.*, 32 Wash. 586, 73 Pac. 670. The right to exercise this endowment of the state may lie dormant. Its exercise depends upon an expression of the legislative will or sanction. A municipal corporation could not exercise it unless expressly authorized by the legislature. *Tacoma v. State*, 4 Wash. 64, 29 Pac. 847; *Long v. Billings*, 7 Wash. 267, 34 Pac. 936; 10 Am. & Eng. Ency. Law (2d ed.), p. 1049.

Vattel, in Le Droit des Gens, Lib. 1, Ch. 20, par. 244, lays down the primary rule as follows:

"In political society everything must give way to the common good, and even if the person of the citizen is subject to this rule, their property cannot be excepted. The state cannot live or continue to administer public affairs if it have not the power to dispose of every kind of property under its control."

All of our statutes extending this power to municipal and public service corporations are drawn in conformity with the rule that it is a proceeding *in rem*, and that it is not necessary

to look beyond those named in the statute in the prosecution of these proceedings.    Bal. Code, § 5637 (P. C. § 5102); 7 Ency. Plead. & Prac., 503. The law (1873, p. 190, § 4) says what the petition for condemnation of land shall contain and who shall be made parties.    "The owners and occupants thereof and of persons having any interest therein, so far as known, to the officer filing the petition or appearing from the records in the office of the county auditor."    In order to uphold the title of respondent, we would be compelled to hold that King county, to which the like sovereign power of the state to levy and collect taxes has been delegated, is a necessary party in all cases prosecuted under this act, when a tax has been assessed and is unpaid.    Under statutes providing that the petition should name the owner or owners, those holding equitable interests, mortgagees and lienholders, have been held to be unnecessary parties.    It is only under statutes providing that interested parties shall be brought in that they are held to be proper parties.

The question reduces itself to the question whether the county, by reason of its tax lien, is a person having an interest therein, within the meaning of the act.    We think not. The object of § 4 was to bring before the court, the owners, occupants (*Owen v. St. Paul etc. R. Co.*, 12 Wash. 313, 41 Pac. 44), mortgagees, and such others as the records in the office of the county auditor might show had an interest in the land or the compensation to be paid therefor; not that they might defeat the action, for the public use being determined, no defense would lie, except as to the amount of damages; but that the fund to be paid into court may be properly and finally disposed of.    By design or oversight the legislature has taken no account of the "interest," if it may be so called, of the county.    The statute was probably drawn on the theory that a municipal corporation exercising the sovereign power of the state, being itself a political subdivision of the state, could take land under the power of eminent domain without regard to taxes or tax liens, for if the state could so

take land, it can delegate the power, and in the absence of an express reservation, it must be held that the city has acquired the full power possessed by the state. This court has held that, although the legal title to land held under an executory contract of sale is in the state of Washington, the state is not a necessary party, because the interest of the state is not subject to condemnation, although the interest of its vendee under such contract may be. In *State ex rel. Trimble v. Superior Court*, 31 Wash. 445, 464, 72 Pac. 89, 66 L. R. A. 897, this court said:

"While it is true that the state holds the naked legal title to these tide lands as trustee for the relators and their assigns, and is, to that extent, interested therein, it is also true that it is no more concerned in the condemnation suit than it would be in a voluntary transfer by the relators of their interest to the respondent herein. The state cannot be involuntarily deprived of its title by condemnation or otherwise, and the fact that it was not made a party to· the proceeding cannot affect its rights or those of the relators in any manner or degree whatever. All that the relators are entitled to is just compensation for their interest in the land, and such compensation can readily be determined without regard to the rights of the state or any other person or party."

See, also, *North River Boom Co. v. Smith*, 15 Wash. 138, 45 Pac. 750; *Seattle & Montana R. Co. v. State*, 7 Wash. 150, 34 Pac. 551, 38 Am. St. 866, 22 L. R. A. 217.

If the state is not a necessary party in interest, it would seem that the county to whom it has delegated its power to collect the public revenues, is likewise devoid of interest within the meaning of the law. The condemnation suit goes no further than to fix the damages and transfer title between the condemning party and the owner. Unquestionably the original action was sufficient to divest the title of the record owner. The city was not bound to go beyond the limit of knowledge possessed by its officers and the records in the auditor's office. By complying with the statute it took so much of the several tracts bought by respondent as the su-

perior court had determined was necessary for the public use. The land being taken for a strict, as contra-distinguished from a *quasi*, public use, was discharged *pro tanto* of the tax lien. The property became public property. Public property is never taxed, and property possessed of that character is, under a statute like the one under consideration, of necessity freed of the burdens imposed in the individual. The general rule is that the omission of any proper party will not invalidate the proceedings as against such persons as are made parties. *State ex rel. Trimble v. Superior Court, supra;* 7 Ency. Plead. & Prac., 504. It is a necessary deduction from the premises that the city took the full fee simple title and the interest, both present and prospective, of all concerned in the property. Proper apportionment of the fund between the true owner and the one entitled to a part thereof can be had by timely application to the court making the award. Lewis, Eminent Domain, 1348; *Watson v. New York Cent. R. Co.,* 47 N. Y. 157; *Yakima Water L. & P. Co. v. Hathaway,* 18 Wash. 377, 51 Pac. 471; *Armstrong v. Moore,* 1 Kan. App. 450, 40 Pac. 834; *United States v. Dunnington,* 146 U. S. 338, 13 Sup. Ct. 79, 36 L. Ed. 996; *Crane v. Elizabeth,* 36 N. J. Eq. 339; *Ross v. Adams,* 28 N. J. L. 160; *Chicago etc. R. Co. v. Sheldon,* 53 Kan. 159, 35 Pac. 1105.

The whole tenor of the act sustains this conclusion. It provides (§ 17) that when it appears that the compensation has been paid to the person entitled thereto, or paid into court, the court "shall enter an order that the city shall have the right at any time thereafter to take possession of or damage the property in respect to which such compensation shall have been so paid or paid into court as aforesaid." And in § 13, that

"No delay in ascertaining the amount of compensation shall be occasioned by any doubt or contest which may arise as to the ownership of the property, or any part thereof, or as to the interests of the respective owners or claimants,

but in such case the court may impanel a jury to ascertain the entire compensation or damage that should be paid for the property or part of property, and the entire interests of all the parties therein, and may require adverse claimants to interplead, so as to fully determine their rights and interests in the compensation so ascertained. And the court may make such order as may be necessary in regard to the deposit or payment of such compensation;"

thus showing that the legislature had in mind the paramount necessity of cities of the first class to provide for the health, comforts and convenience of congested populations. All taxes are levied under the express or implied power of the state. The state can fix the subject of taxation and exempt property. It can limit or extend the time of payment. The authority so delegated, when exercised, is none the less the execution of the state's power. If it can do all these things, it can take away not only the power to tax but the subjects of taxation as well. No person or municipality can acquire, as against the state, a vested right to taxes, or the right to insist upon the collection of taxes when levied.

The city having taken the full title, the county had nothing to sell under its foreclosure proceedings. Its right was limited to the sale of the interest of the owner. At the time he had no interest. "No one can obtain an interest in the land sold that the defendant in the tax suit never held or owned." *Moore v. Woodruff,* 146 Mo. 597, 48 S. W. 489. Where land was sold as the property of an individual, but was in fact owned by the state, the supreme court of Ohio held,

"The title to these lands being in the state, the auditor of Warren county had no authority to put the lands upon the duplicate for taxation, and the tax sale and the deed of the auditor were void, and conferred no right upon the purchasers to hold the lands." *State v. Griftner,* 61 Ohio St. 201, 55 N. E. 612.

On July 6, 1867, certain property was sold to the state of Mississippi for the nonpayment of taxes. In 1870, the same

property was sold to the levee board for levee taxes claimed to be due thereon. One Mary G. Baskett bought the tax title held by the board. It was held that she took nothing by her deed as against the state's grantee, upon the theory that public property was not subject to sale for taxes. *Ricks v. Baskett*, 68 Miss. 250, 8 South. 514. Art. 7, § 2 of the constitution, provides that the property of the United States and of the state, counties, and school districts and other municipal corporations shall be exempt from taxation. The purpose of this provision needs no argument to make it plain. It is enough to say that the whole people have said that property once acquired by a political subdivision of the state shall not be taken or its use impaired by sale to satisfy a tax. The logical conclusion from these observations is that, if property owned by a municipal corporation is not subject to a tax, property taken over by it under a statute that vests absolute title cannot be sold to satisfy a tax. To hold otherwise would defeat the resolution of the people to preserve the character of property when once dedicated to a public use.

In *Puyallup v. Lakin, supra*, the property was purchased under a contract. The law of eminent domain and the special statute upon which this case rests were not under consideration. The city had the right of contract and, in the absence of any law exempting it from the burdens of its trade, it was bound to meet them. The difference between that case and this is that the one rests in simple contract, the other is sustained by the sovereign power of the state. We are unwilling to extend the doctrine announced in the *Puyallup* case. Our attention is directed to that class of cases holding that a lien for general taxes is paramount over a lien of lesser degree. *Pennsylvania Co. v. Tacoma*, 36 Wash. 656, 79 Pac. 306; *Ballard v. Ross*, 38 Wash. 209, 80 Pac. 439. Reference to the cases cited and others referred to therein will show that the question before the court was the comparative strength of two liens, each created under the warrant of a statute. The court held that the one sustained

by the greater interest was paramount over the one sup-
ported by the lesser interest. But none of the cases go so
far as to hold that a tax lien of any kind is paramount to
the right of the state to abolish it or to legislate it out of
existence, as in our opinion it has done in the case at bar.

The judgment of the lower court is reversed.

FULLERTON, GOSE, CROW, and MOUNT, JJ., concur.

MORRIS and PARKER, JJ., took no part.