## No. 13,448.

City of Shreveport vs. Shreveport City Railway Co. et al; and City of Shreveport vs. Shreveport Belt Railway Co. et al. (Consolidated Causes.)

### Syllabus.

A street railway company in the City of Shreveport is legally bound, under the provisions of Sections 2 and 3 of Act No. 10 of 1896, and an ordinance adopted in pursuance thereof, to pay and reimburse to the municipality, a sufficient amount to cover the cost of the pavement with vitrified brick of the space its road-beds occupy in the streets of the city, and two feet on the outside of the rails on each side of said tracks in addition, such additional space being required for the operation of its tracks in the exercise of its franchise and right-of-way.

Notwithstanding the opinion of this court in City of Shreveport vs. Prescott, 51 Ann. 1895, does not constitute a bar against the assertion of the rights of the defendant street railroad companies, it is a strong and very appropriate precedent.

#### On Rehearing.

1. Act No. 10 of 1896 authorizes the assessment of street railway companies for the paving of streets through which their roads run, and, in specific terms, establishes the basis upon which the liability of such companies is to be ascertained. And it is incompetent for a municipal corporation and a railway company, by convention, to change the basis so established so as to reduce such liability below that properly arising under the statute.

2. In this case, an obligation with respect to street maintenance, entered into prior to the passage of the Act of 1896, and predicated upon a franchise for a single track road, having been superseded by a compromise, also relating to a single track road and entered into after the passage of that act; and such compromise having been, thereafter, annulled by a contract providing for the contruction and maintenance of a double track road, the fact that the stipulation in the last contract, with respect to the liability of the railway companies for paving, cannot be enforced, because repugnant to law, does not revive the pre-existing convention on the subject, inasmuch as the surrender of the franchise for the double track is neither demanded upon the one hand, nor tendered upon the other; but, on the contrary, said franchise is used for the purpose for which it was granted. Under these circumstances, it is held that the liability of the companies for paving, *quoad* both tracks, should be determined by the statute, and, as thus determined, is in proportion to the space occupied by their road-beds as compared with the entire space to be paved. It is also held that the graded and prepared soil, the cross-ties laid thereon, with the ballast and surfacing, make up the road-bed, and

that its width is represented by the length of the cross-ties, and not by the space between the outer edges of the rails, nor yet by such space, *plus* "clearance space," upon either side of the track.

3. It is unnecessary, for the purposes of this case, to decide, whether or not, in the absence of an express statute, or of any contractual obligation, a street railway company is liable to local assessment upon its road-bed or track for the paving of a street through which the same is laid, and the court withholds its opinion upon that question.

APPEAL from the First Judicial District, Parish of Caddo—*Land, J.*

*Edward Hughes Randolph,* City Attorney, for Plaintiff, Appellee.

*Alexander & Wilkinson* and *Wise & Herndon,* for Defendants, Appellants.

On the rehearing by MONROE, J.

The opinion of the court was delivered by

WATKINS, J. This suit is a sequel to that entitled City of Shreveport vs. Prescott, 51 Ann. 1895, and presents the question for determination what proportion or share of the cost of paving should be charged to the street railway companies which are defendants.

In the Prescott case, the railway companies were not made parties, and are not bound by the decree therein rendered, as between the city and the abutting property owners fixing and determining the relative proportion which the city could assess against them under the law and ordinances which were drawn in question therein.

The claim made on the part of the plaintiff is, that since the decision of the Prescott case, the city has reformed its ordinance in conformity with the views expressed by this court, and levied against the Shreveport City Railway Company, a local assessment for the purpose of reimbursing the cost of street paving, on the basis of eighteen and 2-12ths feet in width, as representing its proportionate share of same—this company owning a double-track road-bed and operating thereon two lines of street cars. It, also, levied a similar local assessment against the Shreveport Belt Railway Company, for the purpose of reimbursing its proportionate share of the cost of street paving, on the basis of nine and 1-12th feet in width—this company owning and operating a single-track railway.

To these assessments, each company makes separate resistance, and in this suit, denies the legality of the local assessment under and by the authority of the city's reformed ordinance and the legislative enactment on which same is predicated—said assessments having been levied at the instance of the city alone, and without the co-operation of the defendants.

It appears that local assessment, as it was made by the city under the ordinance, established the width of each single track at five and 1-12th feet, and estimated what is termed clearance space at two feet on either side of same, and, by this means, fixed the total width of the street for the purpose of the same.

And the application of that estimate resulted in charging the Shreveport Belt Railway Company with the cost of nine and 1-12th feet of space, and the Shreveport City Railway Company with eighteen and 12ths feet of space.

It appears from the ordinance of the city, of date January 14th, 1897, that provision was made for paving with vitrified brick the streets on which the double tracks of the Shreveport City Railway Company were laid; and that, in pursuance of that ordinance, the municipal authorities made and entered into an agreement with a contractor on the 27th of May, 1897, to perform the work for the sum and price of $1.87 per square yard.

The following is an extract from the contract which is set out in full in an ordinance of the city, viz:

"The price of the aforesaid work complete, is hereby fixed at $1.87 per square yard, which the contractor is to receive as follows: The abutting property holders throughout the whole limit of the streets and avenue paved, are to pay two-thirds of the same area at the rate of $1.87 per square yard, each one paying in proportion to frontage, according to Section 3 of Act No. 10 of the Statutes of Louisiana for 1896; and the Shreveport City Railroad, and the Shreveport Belt Railroad Companies are to pay (each one) in proportion to the space occupied by its road-bed, compared to the entire width of the streets (occupied thereby); and under its contract with the City of Shreveport (same) is fixed at (twelve) 12 feet from the corner of Spring and Texas streets throughout the length of the aforementioned streets and avenues. * * * The balance of the cost of paving shall be paid by the City of Shreveport, etc." 51 Ann. 1910.

On considering the foregoing provision of the city ordinance and the contract, we said:

"From the foregoing provisions of the ordinance (and contract) it clearly appears that the abutting property holders have been assessed for *two-thirds* of the entire cost of the street improvement, according to the frontages of their respective properties; that the street railroad companies have been assessed according to the space occupied by their road-beds, compared to the entire width of the street; and that the residue of the expense is charged to the city and payable from its general revenues, etc." *Id.*

It was of this manner of apportioning the cost of the street paving that the defendants, in the Prescott suit, complained; and the burthen of their complaint was that the ordinance placed upon them, as abutters, more than their due proportion thereof.

Of their objection to the local assessment as it was made, our opinion says:

"The defendants deny the legality of the ordinance, and insist that it does not conform to the terms of the law; and they contend that the exaction demanded of them is illegal, and can not be enforced. The contention of the defendants is that: 'The statute in question authorizes the city to pave the streets, and directs that the cost of such improvement shall be borne in the proportion of two-thirds by the property holders on the street, and one-third by the city. Where a street-railway occupies a part of the street, the law declares it shall pay in proportion to the space it occupies compared to the width of the street. No word of authorization appears anywhere, directly or indirectly, expressly or by reasonable implication, that what the railway pays the city is entitled to credit on its one-third of the expense.' " *Id.* 1911.

The contention of the defendant was, that where the total cost of the street improvement was once ascertained, the law required of the city that it should *first* deduct therefrom the proportionate amount due by the street railway companies according to the space that is occupied by their tracks as compared with the total width of the streets that were occupied by them, and prorate the *remainder* between the abutters and the city.

The provision of the law under consideration, and upon which the city ordinance is predicated, is of the following tenor, viz:

"That the owners of real estate so abutting shall pay two-thirds of the entire cost of such work of improvement, and the corporation shall

pay one-third, from its general resources; *provided*, that where a railway bed or track occupies a portion of the street, it shall pay in proportion to the space occupied by its road-bed, compared with the entire width of the street." Section 2 of Act No. 10 of 1896.

Upon careful examination and analysis of the law, and a comparison made between the law and the ordinance, we decided that the contention of the defendants was correct and sustained the same.

So much of the contentions and decision in the Prescott case was deemed necessary to a fair understanding and analysis of the controversy before us—it being one between the city and the railroad companies as to the proportionate amount of the local assessment put upon them—their objection to the city ordinance being principally that it charges them for more space than their tracks occupy.

The following are the grounds of resistance that are urged by the Shreveport City Railway Company, namely:

"*First*.—That from the date of its charter and franchise from the " city of Shreveport to the adoption of the ordinance of the 7th of Sep- " tember, 1897, it operated, and had a right to operate, only a single " track railroad on the streets designated in the ordinance granting " said right, and its bed occupied on said streets the space of seven feet, " or less; and under Act No. 10 of the Acts of 1896, was liable for the " expense of paving said streets for that width only; and that soon " after the city of Shreveport entered into a contract with John F. " Talbot to pave said streets, as alleged in plaintiff's petition, and agreed " that respondent have the payment therefor of a width of seven and " three quarters (7¾) feet; and a proposition was made to respondent " company by members of the City Council and numerous influential " citizens and property taxpayers of the city, and many of them abut- " ters on said proposed paved street, to construct and operate a double, " or two parallel tracks; but respondent company realized that a single " track would meet the requirements of the city for many years to " come, if not for all time, and that double, or parallel tracks would not " materially, if at all, increase the revenues of said company, but in its " construction, maintenance and operation would entail an enormous " additional expense on defendant which it was unwilling to bear, and " could not afford to bear, without some consideration in view of the " requirements of Act No. 10 of 1896.

" That in view of all these facts, and in consideration thereof, the " plaintiff adopted an ordinance on September 7th, 1897, permitting

" defendant company to lay a double, or parallel track, on Texas street,
" Common street and Texas avenue, and in consideration of the said
" additional grant, required defendant company to pave in accordance
" with the contract between the plaintiff and Talbot, the amount agreed
" to be paid by the city to said Talbot, to the extent of nine and five-
" twelfths (9 5-12) feet in width.

" That the adoption of said ordinance is a contract between the said
" city and defendant company, and cannot lawfully be abrogated and
" annulled, and can be complied with by said city without detriment or
" cost to the abutting property owners.

" *Second.*—In the event that the said ordinance of the 7th of Sep-
" tember, 1897, should be declared null and of no effect between the
" plaintiff and defendant company, as also the ordinance of July 10th,
" 1897, then respondent avers that ordinance of May 4th, 1891, requir-
" ing defendant company, as required in previous ordinances, to pave
" with rock or gravel a distance of three feet on each side of the rails,
" and a depth of eight inches, is in force and effect, and is the law gov-
" erning the obligation of defendant company in regard to the paving
" of said streets, and under said ordinance and obligation the costs of
" paving with rock or gravel, as therein provided for, would be greatly
" less than the present Talbot contract.

" *Third.*—That under no circumstances can defendant company be
" held liable for a space exceeding fourteen (14) feet in width, because
" each bed, or track, occupies a space of only seven (7) feet in width, or
" less.

" *Fourth.*—By amended answer respondent avers that the ordinance
" of the city of Shreveport is unconstitutional and violative of the
" Constitution of the State of Louisiana, and specially that it is vio-
" lative of the Constitution of the United States, Title one, Section ten
" of Article one, in that it divests vested rights and impairs the obliga-
" tions of a contract, the said contracts which the said city seeks to im-
" pair, being an ordinance of date May 4th, 1891; July 1st, 1897, and
" September 7th, 1897, as alleged in respondent's original answer. The
" testimony shows that this railroad has been operated on the streets
" named a great many years, running horse-cars until about 1891, it
" changed to electric cars. In the spring of 1897, the city of Shreve-
" port entered into a contract with one John F. Talbot to pave Texas
" street, Common street and Texas avenue, with vitrified brick on a
" concrete foundation of eight inches, at a price of one dollar eighty-

" seven and one-half cents ($1.87½) per yard. It was soon apparent
" that the city authorities and the railroad company differed materially
" in regard to the expense that the railroad company should be put to
" under the paving contract, contending that under prior ordinances,
" the company was only liable for the cost of paving with rock, or
" gravel, a depth of eight (8) inches and a width of two (2) feet on
" each side of the track. After numerous and lengthy conferences, the
" result was a compromise, by which the railroad agreed to pay for the
" width of seven and three-quarters (7¾) feet, pursuant to the Talbot
" contract, and which was embodied in the ordinance thereafter adopted
" by the City Council. Before the work had proceeded very far, influ-
" ential citizens and property owners, many of them abutters on the
" streets named, with the aid of the press of the city, began to agitate
" the propriety of making a double track, arguing that unless such
" double track was now laid in the nature of things, it never would be.
" The officials of the railroad company, as shown by the testimony of
" W. B. Jacobs, realized that a double track would be very much more
" expensive in its construction, maintenance and operation, than a single
" track, and would produce little or no additional revenues over a single
" track, and would, in fact, not be required by the public for many
" years to come, if ever. The pressure, however, of the ambitious citi-
" zens of the rapidly growing town continued   *   *   *   both on the
" city authorities and on the railroad company, to consummate their
" cherished purpose. As an inducement to the railroad company to
" enter upon the scheme of a double track, the city of Shreveport was
" led to adopt the ordinance of the 7th of September, 1897, granting
" to said defendant company a right to construct a double track, and to
" pay for the paving to the extent of nine and five-twelfths (9 5-12ths)
" feet in width. It is in the power of the city to carry out this con-
" tract with the defendant without entailing any additional burden on
" the abutting property owners. As an illustration of the proposition,
" we will take the testimony of Engineer Kane, on page 15 of the record,
" in regard to the avenue. Kane says: 'It is a street eighty (80) feet
" in width—fifty-four (54) feet in width from curb to curb; then as-
" suming that from that space there be deducted a width of eighteen
" (18) feet and two (2) inches, occupied by defendant's railroad bed, it
" would leave a width of eleven feet and six-tenths of a foot to be
" chargeable to the property owners on each side, and the city would be
" chargeable for a like space; therefore, the city would have a space of

" eleven feet and six-tenths of a foot to provide for, and to that extent
" it could protect its contract with the defendant company, without add-
" ing one dollar to the burden imposed upon the abutters. If, in the in-
" terest of the public, it should be desirable to lay a railroad track and
" operate it along streets already paved, it would be entirely proper and
" legal for the city to grant said right upon such terms and conditions
" as the city authorities might deem best, to the extent of relieving the
" railroad company from the payment of any of the expense that had
" been incurred for paving of same."

We gather from the foregoing statement of the points the defendants
rely upon and the argument of their counsel, in connection with the
facts stated, that the Shreveport City Railway Company, owned and
operated only a single track street railroad, at the time the city ordi-
nance proposing the levy of a local assessment was adopted on the 14th
of January, 1897, and at the time of the adjudication and acceptance
of the contract for the performance of the work was completed on the
27th of May, 1897; and that said company continued to thus operate its
single track railroad up to and inclusive of the 7th of September, 1897.

That, under the terms and provisions of Act No. 10 of 1896, it was
only liable for the cost of paving the space its road-bed occupied in the
streets, and it is "the space of seven (7) feet, or less."

That soon after the city entered into a contract for the street-pave-
ment, and for certain reasons and considerations specified, it adopted
an ordinance permitting and authorizing the company to construct
another track parallel with, and in close proximity to, the track first
laid; and that the city, "in consideration of said additional grant, re-
quired the defendant to pave in accordance with the contract between
(the city and the contractor) to the extent of nine and 5-12ths feet in
width."

The defendant, in its answer, sets up that ordinance as a contract be-
tween the city and the company "which cannot lawfully be abrogated
and annulled, and can be complied with by the city without detriment
to the abutting property owners."

But, in the alternative that said ordinance should be declared null
and of no effect, then defendant pleads the benefit of a prior ordinance
of date May 4th, 1891, which required the defendant "to pave *with rock
or gravel a distance of three feet on each side of the rails,* and (to) a
depth of eight inches"—its insistence being that said former ordinance
is now "in force and effect, and is the governing obligation of defend-

ant company in regard to the paving of said streets; and under said ordinance and obligation, the *cost of paving with rock or gravel,* as therein provided for, would be greatly less than (under) the present Talbot contract."

That under no circumstances can defendant be held liable for a space exceeding fourteen feet in width because *each bed,* or *track,* occupies a space of only seven feet in width.

That finally, the amended ordinance is illegal, unconstitutional, and violative of the contract clause of the Federal Constitution, as an attempted impairment of its aforesaid rights under the ordinance of the 7th of September, 1897.

The claim of the defendant is, that the last named ordinance was the result of a compromise "by which the railroad agreed to pay for the width of seven and ¾ths feet, pursuant to the Talbot contract, and which was embodied in the ordinance thereafter adopted by the City Council."

That statement evidently has application to the defendant's single-track railroad, alone, as appears from the following additional statement, viz:

"As an inducement to the railroad company to enter upon the scheme of a double track, the city of Shreveport was led to adopt the ordinance of the 7th of September, 1897, granting to said defendant company a right to construct a double-track, and to pay for the paving of nine and 5-12ths feet in width."

Recapitulating the defendants' different contentions, we have the following propositions: (1) that under the city ordinance of May 4th, 1891, when the company's road was first submitted to electricity, one of its stipulations was, that it was required to pave with rock or gravel the road-bed of its single track and for "a distance of three feet on each side of the rails and (to) a depth of eight inches; (2) that under the city ordinances of the 14th of January and the 27th of May, 1897, the company stipulated with the municipality for the paving of the width of seven and ¾ths feet as the space occupied by its single track road-bed; (3) that in the ordinance of the 7th of September, 1897, granting to defendant the right to construct and operate a double-track railroad, it was stipulated that the company was only to pay for the paving of the total space of nine and 5-12ths feet as the width of the road-bed of both tracks.

The city claims the right under its ordinance, which has been re-

formed so as to comply with the requirements of the opinion of this court in the Prescott case, to levy against the railroad company an assessment on the basis of eighteen and 2-12ths feet as the total width of the two tracks, including the space of two feet on each side of each track.

Simplified, the defendants' complaints are substantially as follows, viz:     .

1st. Its charter or franchise only requires it to improve with rock or gravel, and that the imposition of the charge of paving with vitrified brick and concrete is about double its original obligation, and therefore, the attempt to enforce this charge is violative of its contract rights, and null and void.

2nd. That the city made an agreement with it to only charge against it a width of 9 5-12ths feet for paving these streets, and that the attempt to charge 18 2-12ths feet is violative of the contract.

3rd. That if the charge can be made for both tracks, the width imposed is excessive, as the road-bed of the railway does not occupy 18 2-12ths feet.

There is but little controversy as to the fact that the assessment is properly placed at eighteen and 2-12ths feet, as the space occupied by the defendant's double tracks, including the two feet on either side of each track for the necessary clearance space for the operation of its trains.

On this subject the testimony of the city engineer is as follows:

"Q.—Are you familiar with the assessments that have been offered in evidence?

"A.—Yes.

"Q.—Did you assist Mr. Murf, the comptroller, in making the figures as a basis for the assessment?

"A.—Yes.

"Q.—Is this assessment correct, on the basis of eighteen and one-half feet?

"A.—Yes. .

\*        \*        \*        \*        \*        \*        \*        \*     .

"Q.—How did you get the 18 2-12th feet?

"A.—That is from measuring from the outer part of the outside rails, and adding two feet, on each track.

"Q.—What is the distance from outside to the outer rail?

"A.—Fifteen feet and two (2) inches.

"Q.—What is the width of each track?

"A.—Five (5) and one (1) inch; about 5 1-12 feet.

"Q.—That makes 10 2-12 feet?

"A.—Yes.

"Q.—Then you add two (2) feet on the outside of each track?

"A.—Yes. And the distance is between those tracks, you see, that makes the 18 2-12 feet.

"Q.—The width of each track just considering the rails as they appear on the surface is 5½ feet?

"A.—Yes.

"Q.—There are two tracks there?

"A.—Yes.

"Q.—Therefore, the superficial space is 10 2-12 feet?

"A.—Yes.

"Q.—Actually covered by the tracks themselves?

"A.—Yes. The space actually covered by the tracks themselves.

"Q.—And the addition of four feet for each track makes the 18 2-12 feet?

"A.—Yes.

"Q.—Each track is 5½ feet—that is 5½ feet from the outside of one rail to the outside of the other?

"A.—Yes.

"Q.—And on the outside of each rail is two feet?

"A.—Yes; and that makes the 18 2-12 feet.

*          *          *          *          *          *          *          *

"Q.—Have you measured the width of the cars?

"A.—Not these new cars; I have measured the old ones.

"Q.—And you found them how wide?

"A.—They varied; some were 7½ and some were 8 feet.

*          *          *          *          *          *          *          *

"Q.—The neutral space between the tracks; what was that measurement—in between the rails?

"A.—In between the rails; I think in the neighborhood of 5 feet.

*          *          *          *          *          *          *          *

"Q.—I understand that you have charged against the railroad from the outer rail to the outer rail, and two feet on each side. And that you claim, makes what?

"A.—The 18 feet 2 inches.

"Q.—That measurement would embrace all the space between the double tracks?

"A.—Yes. It takes in everything."

This witness was carried over the same ground repeatedly, but his statements are all to the same effect; but the following interrogation is important, viz:

"Q.—When these cars meet on the parallel tracks can any ordinary vehicle use the space between them?

"A.—No, sir.

"Q.—And these cars have the right of way? ·

"A.—Yes, sir."

The proof shows that the street upon which the defendant's road is constructed is eighty (80) feet in width, that is, fifty-four (54) feet from curb to curb; and upon the basis of the apportionment made by the city, the abutter would be liable for 23 4-12 feet, the railroad company for 18 2-12 feet, and the city for 12 6-12 feet—leaving the banquettes out of the calculation.' But, if the assessment be restricted to the nine and 5-12 feet fixed in the ordinance of the 7th of September, 1897, we would have the following propositions, viz:

For the railroad company, 9 5-12; for the abutters, 29 4-12, and the city, 15 3-12 feet.

By this alteration the share of the abutters would be increased to the extent of six feet of space, and that of the city would be likewise increased to the extent of 2 9-12 feet of space.

It clearly appears that the defendant Shreveport City Railway Company was fully aware of the city ordinances of January and May, 1897, and of the city's engagement with the street contractor when it accepted the franchise from the city on the 7th of September, 1897, to build a parallel track, and must have entered into its engagement with full knowledge of the situation, and that the paving was to be done with vitrified brick and not with rock or gravel. Consequently, we are authorized to assume that the company was willing to pay for the paving according to contract.

It also appears that, in so far as its first track is concerned, its engagement with the city was to pave for a distance of *three* feet on each side of its rails; and in its contract of September, 1897, that clause was neither abrogated nor withdrawn; on the contrary, the distinct claim is now made by defendants, that said contract "is in force and effect, and

is the law governing the obligation of defendant company in regard to the paving of said streets," etc.

That might be perfectly true were it not for its subsequent contract, which must be viewed as a modification of the former one, in respect to the material to be employed in the construction of the work; and it can not be denied that the original contract establishes a precedent for the stipulation for the paving of two feet on the outside of each track.

Not only so, but the ordinance of May 4th, 1891, required the *railroad company* to pave the street instead of imposing that duty on the city; while all the ordinances of 1897 provide for the work to be performed by a *contractor*.

In assenting to this change of obligation, the defendant clearly and unequivocally relieved itself from its *individual* obligation to pave the road-bed of its track and *three feet* on each side of same with rock or gravel, and, as a fair equivalent, consented to reimburse to the city, or its contractor, a sum equal to the cost of the construction of a space of *two feet* on the outside of each track with vitrified brick. At least that seems to us to be a fair deduction from the facts related.

In so far as the alleged contract of the 7th of September, 1897 proposes to fix a space of nine and 5-12 feet as the limit of its liability, it seems to us entirely inadmissible under the facts, as we have detailed them, and in view of the principles of law that we announced in the Prescott case.

It is quite true that the railroad companies were not parties to the Prescott suit, yet the defendants made opposition to the city ordinances of January and May, 1897, upon the ground that they conferred upon the railroad companies unjust advantages to their prejudice, in plain disregard and violation of Act 10 of 1896; and it was that contention that we sustained, and our decree necessitated the reformation of the ordinance in that respect.

Whilst the judgment in the Prescott case is no bar against the claims that are asserted by the defendants herein, it is a precedent of the highest rank and the strongest character.

Not only so, but to decree the defendants entitled to the diminution of assessment, would unsettle the principles that we announced in the Prescott case, to the detriment and injury of both the abutters and the city; and the abutters would, in great measure, if not entirely, lose the benefit they gained thereby.

In our opinion in that case, amongst other things, we said:

"The foregoing consensus of judicial opinion"—referring to the numerous decisions and extracts from text books which are therein quoted—"affirms the principle that the right of occupancy of a portion of the streets of a municipality by a street-railway corporation, is property which is benefited by a street improvement to the extent of the space occupied by its road-bed and tracks, which render same liable for its proportionate share of its cost just as the property of abutting property owners are liable; that the railway company using the streets for the operation of its cars is in duty bound to pay for the work on the streets which its tracks alone makes necessary—that is to say, all expenses for that portion of the work lying between the exterior rails of the tracks of the road and for a distance of two feet from and exterior to the track on each side thereof; that in no case can any portion of the cost of such improvement be attributed to, or assessed against the abutting property owners; that where a statute or municipal ordinance makes provision for the assessment of a street railway corporation for the pavement of such space as its tracks and road-bed occupy, such provision is mandatory, and *any* portion thereof which is put upon abutting property owners is illegal and void; that the very object and aim of such statutes are to relieve the municipality and abutting owners from defraying any portion of the cost incident to this part of street improvement."

City of Shreveport vs. Prescott, 51 Ann., p. 1929.

Not only did this court quote and approve the principles announced, but we said that they justified "the strictest interpretation" of such paving statutes, and, also, "the construction we have given to the provisions of Section 2 of Act No. 10 of 1896." And we further said that "this is particularly true of this statute, for the reason that it is the *fiat* of the General Assembly which confers upon municipalities plenary power, upon their own motion, and without consulting the wishes of abutting property owners, to contract for unlimited street improvement at their cost." *Id.*, page 1929.

But this court dealt with the questions of relative space and proportionate share of the cost of street improvement, more directly, and in so doing, held, that the provision of the ordinance of the 27th of May, 1897, which fixed the space that was occupied by the single track of the Shreveport City Railway Company at nine and 1-4 feet, whereas it was alleged and proven to be occupying the space of fifteen and 1-2 feet, should be vacated; and in thus deciding, our decree conformed to the

opinion expressed to the effect that "in no case can *any* portion of the cost of such improvement be attributed to, or assessed against the abutting property owners."

We are of opinion that the principles of law upon which the Prescott case was decided are entirely correct, and in keeping with the jurisprudence of the courts of other States of the Union, and we deem them strictly applicable to the case that is stated by the railroad companies.

In this position of the respective rights of the abutters and the railroad companies, we come to the consideration of the alleged contract clause of the supplemental charter of the Shreveport City Railway Co., of date September 7th, 1897.

At the outset, it must be observed, that the city ordinance of that date only granted to the company the right to construct and operate a *new* track parallel to its *old* one which had been operated by electricity since 1891; and that the engagement that the city made with the contractor for paving the streets, including those on which its *single* track was being operated, had been in force several months, and under which the rights of abutting property holders had become *vested* in virtue of the ordinance and the law. In consequence thereof, any right that the corporation acquired under the ordinance and its supposed contract— even if strictly legal—ought not to be considered as possessiong any retrospective effect, so as to impair the vested rights of abutters, and materially increase their burdens.

But the decisions appear to indicate a want of power to make such contracts, and particularly, when same are at variance with the express terms of the enabling statute under which such municipal contracts are made; and it is not surprising that authorities are abundant in support of the proposition that municipalities are incapable of making contracts at variance with the law. City of Shreveport vs. Prescott, pages 1922 *et sequilur.*

Recognizing the great importance of the legal questions that are involved, and that this cause required an examination, analysis and application of the principles of our decision in the Prescott case, to the contract rights and legal obligations of the railroad companies, especial care has been taken to adjust them according to a strict interpretation of the enabling statute and the legal rights of abutters; and, in so doing, we have arrived at the conclusion that the reformed ordinance and the assessment thereunder made against the Shreveport City Rail-

way Company have fairly accomplished the manifest purpose and object of the Legislature in enacting the law of 1896.

The only point of objection that is taken by the Shreveport Belt Railway Company is that which relates to the amount of space with which it is legally chargeable under the law.

It operates only a single track street railroad and the assessment made by the city under its reformed ordinance is for the cost of the pavement of nine and 1-2 feet in width.

Our investigation of the law and evidence sustains the assessment. The judge *a quo* correctly decided in favor of the city and sustained the reformed ordinance and the assessments made against each of the defendants.

Judgment affirmed.

BLANCHARD, J., takes no part in this decision, being recused on the ground of interest.


## ON REHEARING.

MONROE, J.

In the matter of City of Shreveport vs. Prescott, *et als.,* it was held by this court that the proportion of paving for which the front proprietors are liable is to be ascertained by first deducting from the whole cost the portion chargeable to the street railway companies, and then dividing the remaining liability between the city and the front proprietors in the proportion of one-third to the former and two-thirds to the latter. As the street railway companies were not parties to that litigation, the judgment did not bind them, or determine what proportion of the paving, if any, they are liable for. Upon the contrary, quoting the language of the opinion, that question was "left open for determination, contradictorily, by and between the interested parties, that is to say, the abutting property holders, the street railway companies, and the city—so that the due proportion of the assessment chargeable against each, may be legally ascertained according to law." City of Shreveport vs. Prescott *et als.,* 51 Ann. 1931. In the instant case, the "interested parties", that is to say, certain of the abutting property holders, the street railway companies and the city, are before the court, presenting and asking to have determined, the question, which was thus reserved until it should be so presented, *i. e.,* for what proportion, if any, of the paving, are the railway companies liable? The city is now claiming that they are liable, where they have double tracks, in the

proportion to the whole cost that 18 2-12 feet bears to 54 feet; as it is claimed that the aggregate width of two tracks, *plus* two feet, called "clearance space", is 18 2-12 feet; and that the total width of the street between the curbs is 54 feet. The defendant companies, upon the other hand, stand, first, upon a contract embodied in an ordinance of Sept. 7, 1897, fixing upon 9 5-12 feet as the total amount to be paved by them, for the two tracks; and, in the event of their not being sustained in that position they claim the benefit of the contract of May 4th, 1891, whereby they were to "rock or gravel" the street, to a certain width. And, both positions being found untenable, they insist that the only law under which it can be claimed that the assessment of their property is authorized is specific to the effect that such assessment must be predicated upon the space occupied by the road-bed (citing Act No. 10 of 1896), and that as their road-beds occupy less space than they are assessed for, the assessment should be reduced.

Dealing with the propositions of the defendant companies in the order in which they are stated; we are still of the opinion that it was incompetent for the City Council, in September, 1897, to fix upon 9 5-12 feet as the width for which defendants should be assessed upon two tracks, irrespective of the actual width of the road-beds upon which such tracks rest, for the reason that Act No. 10 of 1896 establishes the basis upon which the assessment is to be made, and neither the Council, nor the companies, nor both of them, can effectively establish any other basis.

The statute in question provides that, "where a railway bed and track " occupy a portion of the street, it shall pay in proportion to the space " occupied by its road-bed compared to the entire width of the street       * " *   *   that the intersections of all streets shall be paved at the expense " of the municipality and railway, occupying a portion of the same, in " the proportion to the space the said road-beds may occupy with rela- " tion to the whole intersection."

The companies defendant must therefore pay in proportion to the space occupied by their road-beds, unless better cause to the contrary is shown than the ordinance of September, 1897. This brings us to the next proposition, *i. e.,* that in the event that the court refuses to sustain the ordinance of September, 1897, the companies are entitled to the enforcement of the contract of May 4th, 1891, whereby they were to "rock or gravel", to a certain width and depth, the street through which their track was laid. Conceding, *arguendo,* that the contract relied on, in case it becomes necessary to construe it, should be construed as claimed

by the defendants, it does not follow that the alternative to the maintenance of the ordinance of September, 1897, is the enforcement of that contract. The evidence shows, and it is not denied, that there was an intervening contract entered into between the city and the railway companies upon June 9th, 1897, whereby the companies agreed not only to bear a proportion of the expense of paving with brick, but also fixed upon 7¾ feet as the width which would properly represent that proportion, upon the basis of the single track which they, then, had. By this contract they necessarily abandoned any rights which they might have had to limit their paving contributions to rock and gravel. And it was this contract which was in force when the ordinance of September, 1897, was adopted and, which, therefore, the defendants are to appeal to in default of the enforcement of the provisions of that ordinance. No better evidence of this could be desired than the following language in the ordinance of September 7, 1897, taken in connection with the fact that the contract of May 4, 1891, is not mentioned therein, to-wit: "* * * it is the intention of this ordi-"nance to supersede, cancel and annul the compromise agreed upon "between the City of Shreveport and the said Shreveport City Rail-"way Company on June 9th, 1897, and that all ordinances incon-"sistent herewith be and the same are hereby repealed, annulled "and made of no effect, and that this ordinance is to take effect from "and after its acceptance by the said Shreveport City Railway Com-"pany and by the said Shreveport Belt Railway Company."

If it be said that this agreement must also fall for the same reason that the contract of September, 1897, is held to be inoperative, the answer is, that whether that reason is applicable or not depends upon whether both contracts present the same feature of repugnance to the law. The contract of September is invalid because it undertakes to establish 9 5-12 feet as the width, upon the basis of which, for a double track road, the defendants are to be assessed for paving purposes, whereas the law establishes a different basis, calling for a greater width. The other contract undertakes to establish 7¾ feet as the width, upon the basis of which, for a single track road, the defendants are to be assessed, and it remains to be ascertained whether this is less or greater than the width required by the statute.

The statute, as we have seen, provides that a railway company "shall pay in proportion to the space occupied by its road-bed." The evidence adduced shows that the road-beds of the defendant com-

panies, measured by the length of the cross-ties used, are seven feet in width, whilst the compromise of June 9th, 1897, called for a width of seven feet nine inches. But the companies now say that it is not the width of their road-beds that ought to be considered, but the space between the outer edges of the rails,—for the reason that the cross-ties were laid merely to hold the rails in position until the concrete which serves as the foundation for the brick pavement, and (as they claim) for the rails, should harden. It is not denied, however, that the graded and prepared soil, with the cross-ties laid thereon, and the concrete ballast and brick surface, all form part of the road-bed, as actually constructed; and, as the road-bed is as wide as its widest part, and as the cross-ties extend to a width of seven feet, it follows that the road-bed is seven feet wide; and it does not affect the question that it might have been made narrower by leaving out the cross-ties. We, therefore, conclude that the claim of the defendant, that, for the purposes of the assessments, the width of their roads should be determined by the space between the outer edges of the rails rather than by the length of the cross-ties is not well founded. Upon the other hand, the city and the property holders claim that the assessable width should be taken to be the space between the outer edges of the rails *plus* two feet on each side for what is called "clearance space," *i. e.*, space required for the operation of the cars, by reason of the fact that the body of the car is about that much wider than the track. Reviewing the adjudged cases on this subject, we find none that sanctions the assessment of "clearance space," unless upon the authority of a statute specifically declaring that the assessment should be made in that way. And, as the statute applicable to this case not only does not so declare, but specifically provides that the assessment shall be made upon another and a different basis, there is no authority in this State for the assessment of such space.

The suggestion might perhaps be made that the defendants are committed to an assessable width of 7¾ feet for each track by reason of the compromise of June 9, 1897. But we are of opinion that this view ought not to control. By the compromise referred to, the railway companies, in order to facilitate the city in the improvement of the street by laying brick pavement, waived the question of their right to stand upon the contract of May 4, 1891, with respect to paving obligations, and not only agreed to share the expense of the pave-

ment, but, apparently, under a misapprehension of facts, consented that their liability should be established upon a basis of measurement somewhat in excess of what the act of 1896 calls for; the idea in fixing upon a width of 7¾ feet being that the cross-ties are seven feet long and that, in renewing them, it would be necessary to disturb the pavement for several inches, on either side, whereas it is shown that by cutting a defective tie in the middle it may be drawn from either end, and hence, that the excavation need not be wider than the length of the tie. Beyond which, it is also shown that, as the roads in question are built, it is not contemplated that the ties will ever be renewed. Moreover the contract was annulled by the contract of September 7, 1897, and whilst the latter is declared to be inoperative in so far as it fixes the assessable width of defendants' roads at less than the statute calls for, it is not necessarily null in other respects, since rights have been acquired under it, the surrender of which is neither demanded upon the one side nor tendered upon the other. It may, therefore, be considered as effective for the purpose of annulling the basis of assessment established by the compromise of June 9th, 1897, which was the preliminary step to the attempt to establish another basis. And the fact that the basis thus attempted to be established has not been sustained, does not revive that which was annulled, because, in the meanwhile, new conditions have arisen to which the provisions of the compromise in June are inapplicable.

We, therefore, conclude that the defendant companies are liable to assessment for paving purposes, under Act No. 10 of 1896, in the proportion that the space occupied by their road-beds bears to the width and length of the street to be paved, and that their road-beds are to be held, for such purposes, and, as now considered, to be seven feet wide each. This conclusion renders it unnecessary that we should express any opinion upon the question, whether, in the absence of an express statute, or, of any contractural obligation, the road-bed of a railway company is liable to local assessment for the paving of the street in which it is built.

For the reasons assigned, it is ordered, adjudged and decreed that the judgments rendered by the District Court, in these consolidated cases, be now annulled, avoided and reversed. It is further ordered that the liability of the defendant railway companies for assessment for the paving of the streets through which their roads run be fixed

upon the basis of the proportion that the space occupied by the beds of said roads bears to the whole length and width of the streets paved, or to be paved; and that, for the purposes of such assessment, the width of said road-beds be, and the same is hereby, fixed at seven feet for each track. It is further ordered, adjudged and decreed, that, after deducting from the entire cost of paving the proportion due by the railroad companies, as hereby fixed and established, the remaining liability be divided between the City of Shreveport and the front proprietors in the proportion of one-third to the former and two-thirds to the latter, save at the intersections of the streets for which no liability rests upon such front proprietors. It is further ordered that all rights, liens and privileges conferred upon the City of Shreveport by and under the Act No. 10 of 1896, and other laws bearing upon the subject, be reserved, and that the case be remanded to the lower court for such further proceedings, in conformity to the views herein expressed, as may be necessary in the premises. It is further ordered that the plaintiff pay the costs of the appeal, and that the costs of the lower court be paid by the defendants.

BLANCHARD, J., takes no part in this decision, being recused on account of interest.