[No. 356. Decided March 16, 1892.]

THE CITY OF TACOMA, *Appellant*, v. THE STATE OF WASHINGTON, *et al., Respondents.*

EMINENT DOMAIN—POWERS OF CITIES—OPENING STREETS.

Although the "freeholders" charter of a city may provide an ample method for the condemnation of private property for use as a public street, and legislative enactment may confer upon cities organized under "freeholders" charters the authority to appropriate private property to corporate uses, such power is inoperative in the absence of an act of the legislature conferring the right of eminent domain and prescribing the method by which it shall be exercised.

The grant of power, under act of March 24, 1890, § 5, subd. 7 (Laws 1889–90, p. 219), to "lay out, establish, etc., streets, alleys, avenues," etc., does not include an implied power to condemn lands, as there is nothing in such a grant which may not be accomplished by purchase of the necessary lands.

*Appeal from Superior Court, Pierce County.*

Proceedings by the city of Tacoma against the State of Washington, Jos. Muller, Seymour R. Allen, H. C. Whitman, David Settlemier, H. C. Clement, J. H. Hall, Mary A. Shead, Baltzell & Rouse, C. M. Easterday, C. A. Gove, Samuel Coulter, F. McDonald, Phœnix Land, Loan and Building Association, and C. P. Ferry, for the purpose of condemning lands for the opening and extension of Chicago

avenue from Sixth avenue to South Twelfth street in the city of Tacoma. From a judgment sustaining a demurrer of defendants to the petition, the city appeals.

*S. C. Milligan* and *M. B. Hoxie*, for appellant.

*John C. Stallcup, Murry & Bryan* and *Fogg & Murray*, for respondents.

The opinion of the court was delivered by

Stiles, J.—A demurrer to the petition of the city of Tacoma, addressed to the superior court of Pierce county, in proceedings taken to condemn certain lands for the extension of streets, was sustained, and the city appeals from the judgment entered thereon. The main ground of the court's decision was that, at the time of the petition, May 9, 1891, there was no law in force in this state in pursuance of which a municipal corporation of the first class acting under a "freeholders" charter, could exercise the power of eminent domain. The position of the court in this respect we fully sustain, and will but briefly state our principal reasons therefor.

It is conceded, and we hold rightly, that the act of March 21, 1890 (Acts, p. 294), has no reference to municipal corporations; and even were the fact otherwise the demurrer in this instance would have to be sustained, inasmuch as the petition was for the appointment of three viewers, and not for a jury as provided in that act. But the sixth subdivision of § 5 of the act of March 24, 1890, relating to the powers of cities of the first class (Acts, p. 219), expressly confers upon those cities when organized under "freeholders" charters, authority to appropriate private property to their corporate uses, and the city of Tacoma, by its charter, adopted in 1890, enacted what purported to be a complete code of condemnation proceedings in aid of its exercise of the power granted by the statute.

5—4 wash.

This charter proceeding it was attempting to follow when stopped by the demurrer of interested defendants. The same act and clause which confers the power of eminent domain upon these cities empowers them "to institute and maintain such proceedings as may be authorized by the general laws of the state for the appropriation of private property for public use." And it was, doubtless, the very absence of such a general law which led to the adoption of the charter law in this case. But the exercise of the power of eminent domain is so high and peculiar a thing that nothing less than an act of the legislature of a state can support it, and that act must not only confer the power, but prescribe the method by which it is to be done. This statement would apply were there no requirement of conformity to the general law, but with the requirement in the same act which confers the power, the rule is doubly binding. Because the constitution permits certain cities to frame charters for their own government is no sufficient reason for their assuming a branch of the sovereignty of the state, which has no element of municipal government in it, and the provisions of the charter must therefore be held void. Says Judge Cooley, in his Constitutional Limitations, p. 653:

"The right to appropriate private property to public uses lies dormant in the state, until legislative action is had, pointing out the occasions, *the modes, conditions and agencies* for its appropriation."

This doctrine is fully borne out in Lewis on Eminent Domain, § 252; Dillon on Municipal Corporations, § 574–5; Mills on Eminent Domain, § 84; *Allen v. Jones,* 47 Ind. 438, and *Sholl v. German Coal Co.,* 118 Ill. 427 (59 Am. Rep. 379).

It may be contended that the seventh subdivision of § 5 of the act, which is a grant of power to "lay out, establish, etc., streets, alleys, avenues," etc., necessarily includes the

implied power to condemn lands for those purposes. But there have been many such contentions in the courts, and they have been, with entire uniformity, resolved the other way, as there is nothing in such a grant which may not be accomplished by purchase of the necessary lands by agreement with the owners. A very strong case of this kind is that of *Chaffee's Appeal*, 56 Mich. 244 (22 N. W. Rep. 871). An act of the legislature of Michigan authorized the city of Detroit to open, extend, widen or straighten streets and alleys, and to take private property therefor, under proceedings further specified in the same act. But, although the jury were instructed by the act how they were to award compensation for the opening of streets and alleys, nothing was said about compensation for widening, and it was held that the whole act, as to widening streets, was inoperative. The authority remained, but the method of taking was completely paralyzed, because no compensation was provided. Lewis, Eminent Domain, § 240.

There is no doubt that it was the intention of the legislature of 1890, which was the first state legislature, and had thrust upon it the entire reorganization of the state in many directions, to provide some general law by which municipal corporations not only of the first class, but of the other classes also, could acquire real estate by condemnation, but in the press of its business that subject seems to have been overlooked, excepting that the authority was conferred upon the first, third and fourth classes. The legislature of 1891 saw fit to pass an act under which the state might proceed to take private property for public uses, in which the method of procedure was minutely laid down (Acts of 1891, p. 138), but again all provision for the exercise of a like power by municipal corporations was apparently overlooked. Probably another session will not be allowed to pass without some adequate legislation to cover the existing defect; but in the meantime there seems

to be nothing for the cities and towns of the state to do but to wait, or rely upon voluntary street opening, or the acquisition of the necessary lands by contract.

The judgment is affirmed.

ANDERS, C. J., and DUNBAR and SCOTT, JJ., concur.

HOYT, J., dissents.