THE WOODMERE CEMETERY v. PETER ROULO, HIGHWAY COMMISSIONER, AND CHARLES E. UNRUH, CLERK, OF THE TOWNSHIP OF SPRINGWELLS.

*Cemetery associations — Eminent domain — Constitutional law — Certiorari.*

1. Where, on error to review an order of the circuit court quashing a writ of *certiorari* issued to review proceedings for the opening of a street and condemning land therefor, it appears

that the only question raised by the affidavit for *certiorari* was the alleged unconstitutionality of the act under which the proceedings were taken, only that question will be considered;" citing *Railroad Co. v. Weiden*, 69 Mich. 577.

2. The right of eminent domain is the rightful authority which exists in every sovereignty to control and regulate those rights of a public nature which pertain to its citizens in common, and to appropriate and control individual property for the public benefit, as the public safety, necessity, convenience, or welfare may demand; citing Cooley, Const. Lim. (6th ed.) 643.

3. How. Stat. § 4772, which provides that no streets, highways, railways, sewers, or canals shall be opened or constructed through the grounds of rural cemetery associations without the assent of the board of directors, if of any validity whatever, must be construed as no more than an assurance of immunity from unnecessary interference by local officers, by precluding action on their part, without such assent, until the legislative will is manifested by further legislation,

4. Act No. 386, Local Acts of 1893, which authorizes the duly constituted authorities of the township of Springwells, in the county of Wayne, to open a public street through or upon the northerly side of "Woodmere Cemetery," so called,—being the property of a corporation organized under How. Stat. chap. 181, which provides for the incorporation of rural cemetery associations, and prohibits the opening of streets through their grounds without the assent of their boards of directors,— and for that purpose to take certain land from said Woodmere Cemetery, is not unconstitutional because confined in its operation to the particular corporation named in the act.

Error to Wayne.     (Carpenter, J.)     Argued January 9, 1895.     Decided April 16, 1895.

*Certiorari* to review proceedings establishing a street through the grounds of the petitioner.     Petitioner brings error.     Affirmed.     The facts are stated in the opinion.

*William J. Gray* and *Charles M. Swift*, for appellant.

*E. S. Clarkson*, for respondents.

HOOKER, J.    The highway commissioner of Springwells township, in the county of Wayne, ordered a highway to

be opened along the north side of Woodmere Cemetery, condemned a strip of land from the northernmost portion of its premises, and awarded $300 damages. The land appropriated was not in use for burial purposes at the time, no burials having been made within a half mile of it, but it was purchased and held with a view to such use in the near future. The proceedings were removed by *certiorari* to the Wayne circuit court, where the writ was quashed upon the hearing.

Woodmere Cemetery is owned by a corporation organized in 1869, under chapter 181 of Howell's Statutes, entitled "Rural Cemetery Associations." Section 4772 provides that—

"No streets, highways, railways, sewers, or canals shall be opened or constructed through the grounds of such corporation, without the assent of the board of directors granted at a meeting of such board called for the purpose of considering the propriety of granting such assent."

The action of the highway commissioner was based on an act of the Legislature passed at its last session, and known as Act No. 386, Local Acts of 1893, reading as follows:

"*The People of the State of Michigan enact,* That it shall be lawful, and the duly constituted authorities and their successors in office shall have the power, under the regulations prescribed by law for the opening of public streets, to open a public street through or upon the northerly side of Woodmere Cemetery, so called, in the township of Springwells, in the county of Wayne, and State of Michigan, and may take for said purpose the following described land from said cemetery, to wit: All land for the full width of Toledo avenue, so called, when extended, lying· northerly of a line commencing at the point of intersection between the southerly boundary line of said Toledo avenue with the easterly boundary line of said cemetery, near the north-easterly corner thereof, and running thence westerly in a straight line across the lands of said cemetery for the full length thereof, said line being the southerly boundary line of said Toledo.

avenue extended westerly in a straight line across said lands; it being intended hereby to include and describe all land now belonging or which may hereafter belong to said cemetery lying in the direct line of said Toledo avenue extended westerly across said lands, and which may be needed for the extension and opening of said street for the full width thereof across said lands, said land being in town two south, of range eleven east. And all acts or parts of acts, general or special, in conflict herewith are hereby repealed, but only so far as they may apply to the above-described strip of land of said cemetery."

The only question raised by the affidavit for *certiorari* is whether the act of 1893 is constitutional; hence no other will be considered by us. *Grand Rapids, Lansing & Detroit R. R. Co. v. Weiden*, 69 Mich. 577.

Counsel for appellant cite article 15, § 1, of the Constitution, which provides that—

"Corporations may be formed under general laws, but shall not be created by special act except for municipal purposes."

It is also asserted that—

"The object of this provision is to inhibit the granting of special privileges to one or more of a class, and this objection is of as much weight where the special privileges are granted to all but one as if they were granted to one only, and all others were excepted."

The brief continues as follows:

"As amended, the act now reads: 'No streets, highways, railways, sewers, or canals shall be opened or constructed through the grounds of such corporation, without the assent of the board of directors granted at a meeting called for the purpose of considering the propriety of granting such assent. *Provided*, that this provision shall not apply to the Woodmere Cemetery so far as concerns the northerly 33 feet of its cemetery grounds in Springwells.' In other words, Woodmere Cemetery is the only cemetery corporation in the State whose land may be taken for public highways. The valuable privilege of exemption from street openings belongs to every cemetery association excepting this one."

The right of eminent domain is an incident that attaches to every sovereignty, and constitutes a condition upon which all property is holden. *Kramer v. Railroad Co.*, 5 Ohio St. 146. As stated by Mr. Justice Cooley:

"It is the rightful authority which exists in every sovereignty to control and regulate those rights of a public nature which pertain to its citizens in common, and to appropriate and control individual property for the public benefit, as the public safety, necessity, convenience, or welfare may demand." Cooley, Const. Lim. (6th ed.) 643.

Walworth, Ch., in *Beekman v. Railroad Co.*, 3 Paige, 45, says:

"Notwithstanding the grant to individuals, the eminent domain, the highest and most exact idea of property, remains in the government, or in the aggregate body of the people in their sovereign capacity; and they have a right to resume the possession of the property, in the manner directed by the constitution and laws of the state, whenever the public interest requires it. This right of resumption may be exercised, not only where the safety, but also where the interest, or even the expediency, of the state, is concerned; as where the land of the individual is wanted for a road, canal, or other public improvement."

See other cases cited by Mr. Justice Cooley in Constitutional Limitations (6th ed.), p. 644, note 1. In further discussion of this subject, the learned author says:

"When the existence of a particular power in the government is recognized on the ground of necessity, no delegation of the legislative power by the people can be held to vest authority in the department which holds it in trust to bargain away such power, or to so tie up the hands of the government as to preclude its repeated exercise as often, and under such circumstances, as the needs of the government may require; for, if this were otherwise, the authority to make laws for the government and welfare of the state might be so exercised, in strict conformity with its constitution, as at length to preclude the state performing its ordinary and essential functions, and the agent chosen to govern the state might put an end to the state itself. It must follow that any legislative bargain.

in restraint of the complete, continuous, and repeated exercise of the right of eminent domain is unwarranted and void; and that provision of the Constitution of the United States which forbids the state's violating the obligation of contracts could not be so construed as to render valid and effectual such a bargain, which originally was in excess of proper authority."

See further comments on this subject in the same volume, page 339. *Eastern R. R. Co. v. Boston & Maine R. R.*, 111 Mass. 125, and cases cited.

We are not to presume that the Legislature intended to barter away sovereign rights when by general law it provided that lands held by cemetery associations should not be taken for highways without the consent of their boards of directors. While, as shown, an attempt to do so would be futile, it is the rule that such an intention will not be assumed from an act which will reasonably bear another construction. It would seem unnecessary to cite authorities upon a proposition so nearly self-evident. See cases cited in Cooley, Const. Lim. (6th ed.) p. 340, note 1. Therefore, the provision which counsel treat as an exception from the burden of the right of eminent domain, if of any validity whatever, must be considered as no more than an assurance of immunity from unnecessary interference by local officers, by precluding their action, without the consent of the cemetery associations, until the legislative will should be manifested by further legislation. In other words, it required an appeal to itself before such property could be condemned, but did not attempt to bind its successors by an engagement that an incident of sovereignty should be relinquished.

It remains to consider the act of 1893. It is contended that this is void, because the Legislature is prohibited from creating corporations by special act. In our judgment, it cannot be said that this act attempted to create a corporation. At the furthest it undertook to subject certain

property of an existing corporation to appropriation under the right of eminent domain. Whether the Legislature is, by the clause of the Constitution cited, precluded from limiting or in any way extending the powers and franchises of existing corporations by special act, we need not decide. The question before us is whether this constitutional provision precludes a similar exercise of the right of eminent domain where the property of corporations is sought to be taken as in other cases. To be more specific, is the position tenable that the Legislature, having authority to appropriate any property for public purposes, is by this clause prohibited from doing so, in cases of corporations, unless it makes a general rule applicable to all? Having occasion to extend Toledo avenue across Woodmere Cemetery, must it pass a general law that streets may be laid across all cemeteries without consent of the respective boards? If it desired to lay out a State road across these grounds, would it be necessary to provide for State roads through all cemeteries? If it determined that a State capitol, a prison, or an arsenal should be erected upon a part of this land, must it pass a general law that would authorize the condemnation of all other cemeteries for sites for other State capitols, prisons, or arsenals, when it is notorious that but one site, or at most but few sites, would ever be required? These questions would seem to be answered by the asking. The power to create corporations, like that of eminent domain, needed no constitutional provision to confer it upon the Legislature. A restriction was placed upon the exercise of each, but these restrictions are to be measured by a reasonable construction. Innumerable cases sustain the proposition that the exercise of the right of eminent domain is confided to the Legislature, and we think that it was not intended that it should be limited by the provision prohibiting the creation of corporations by special act. The power lies dormant until

the Legislature acts. It may delegate the authority, and recall it at will. Its delegation cannot prevent its own intervention in the very cases covered by the delegated authority. Special acts are recognized everywhere as proper to set the machinery in motion where particular property is needed, and we see no reason why the Legislature may not say that an extension of Toledo avenue is necessary, as well as to determine that a State road across certain premises in any other part of the State is necessary. In neither case would there be occasion for providing for the appropriation of other lands for other roads or purposes, when there was no certainty that they would ever be needed.

As another reason for holding the act of 1893 unconstitutional, it is said that Woodmere Cemetery is protected by a general law, by which it has a right to be governed until such time as the same shall be altered by a law applicable to all other cemetery associations as well as itself, and that "general laws may be repealed, but when repealed the suspension must be general, and cannot be made for individual cases or for particular localities." It has been shown that absolute exemption of this or any other property from the right of eminent domain is impossible, because a law attempting it would be void. If the law in question—*i. e.*, section 4772—is to be held valid, and therefore any protection whatever to the cemetery association, it is because it relieves its property, in common with other cemetery property, from appropriation, until the Legislature shall see fit to exercise its power, which it may ordinarily do by a general law subjecting all property of the class to such appropriation, under proceedings of a specified character, or by special legislation, aimed at the appropriation of particular property, upon its own determination that the requisite exigency has arisen. The effect of the contention of counsel for the cemetery is that, admitting this, the fact that section 4772 requires consent

restricts the legislative power to act specially, and compels it to proceed by general laws. This differs from their first proposition only in degree, inasmuch as the first was said to be a parting with the entire power of the Legislature, while this is an agreement that it will act only through general laws, and is therefore a surrender of a portion of the incident of sovereignty. But, further, section 4772 was practically a prohibition of action by the township officers in all cases, so far as condemnation proceedings were concerned, though they could still lay highways across these lands by consent of the parties. But for this provision, the act would have absolutely prohibited, not only condemnation proceedings by them, but the laying of highways through lands of cemetery associations in any case; and there is much force in the proposition that this provision was inserted, not to create an exemption in favor of the cemetery association, or to make more binding a suspension of power which was already complete, but to mitigate its severity by relieving local municipalities, and the cemetery associations themselves, from the inconvenience of a prohibition which would otherwise preclude action even where all parties desired a road, and where, therefore, the occasion for the prohibition had ceased to exist. Instead of being an exemption from condemnation for the benefit of cemetery associations, it was an exception intended as a means of relief to them and the public from the general law protecting cemetery property from invasion until the Legislature should see fit to take further action. It enabled the cemetery association and local authorities to obtain a highway, when desired by all, without being put to the trouble and expense of legislative action, which without this provision would have been impossible. In other words, section 4772 took away all power from local officers, not to condemn land alone, but to lay highways across cemeteries, thereby not only leaving the power of

eminent domain dormant, but leaving no provisions by which a road could even be laid out, in such cases, except through a direct appeal to the Legislature in each particular case. The saving clause, however, rendered that unnecessary where the board of directors should consent to have the highway laid out. In such cases there would be no necessity for resorting to condemnation proceedings. If, however, consent could not be obtained, there was no other way but to apply to the Legislature. This we think the proper construction of section 4772, and, being so, the act of 1893 should be treated like any other attempt of the Legislature to exercise the power of appropriation of private property for a particular or specified purpose, which does not call for a general law, but may be made the subject of a special act.

The judgment of the circuit court will be affirmed.

LONG, GRANT, and MONTGOMERY, JJ., concurred with HOOKER, J.

McGRATH, C. J. *(dissenting.)* While I concur in the view that the State cannot barter away the right to condemn property for its own use, I do not regard that question as before us. The Legislature has the undoubted right to grant to or withhold from a township the power of condemnation, and it cannot be said that the power in the present case is being exercised as a delegated power or on behalf of the State. The proceedings are not instituted by or on behalf of the State, nor is the property being taken for a State road, or a State capitol, prison, or arsenal. The part of the original act exempting cemetery lands from street-opening proceedings was certainly valid. It simply exempted cemetery associations from the operation of the general law empowering municipalities to condemn lands for street purposes. In order to uphold the act of 1893, it is necessary to hold that the right of

eminent domain is such an essential incident of local government that the Legislature had no power by the original act to restrict its exercise. In *Re Opening of First Street,* 66 Mich. 42, the city had made a contract agreeing not to open a street across the line of a railroad company, and it was held that such an agreement was an abnegation of the legislative functions of the city, and therefore void. The contract in that case never had any validity. If the exemption in the present case was invalid, the act of 1893 was unnecessary, for the township could have proceeded under the general law. The opening of streets is not the business of the Legislature, no more so than is the condemnation of lands for railway purposes, and the same rule is applicable as if the proceeding here were taken in behalf of a railway company. The Legislature grants the authority in either case. The municipality acts in its discretion, whether in opening or closing a street. The act of 1893 imposes no duty upon the township. It is purely a grant of authority. It is no abdication of sovereignty to make a particular contract which restrains the government from conferring a power which it may grant or withhold, or grant with restrictions upon its exercise. Inasmuch as the act of 1893 must be treated as a grant of authority to the township, to be exercised in its discretion, and not as the initiative in a proceeding by or on behalf of the State, it is special in its nature and operation, directed at a single corporation, and therefore invalid.

In my opinion, the proceedings should be quashed.