LEGGETT v. CITY OF DETROIT.[1]

1. EMINENT DOMAIN—CONTRACTS TO RELINQUISH.
   A contract, whereby a municipality relinquishes its right to exercise the power of eminent domain, is void as being against public policy.
2. MUNICIPAL CORPORATIONS—DEEDS—RELEASES FROM FUTURE ASSESSMENTS.
   A condition subsequent in a deed to a city that the grantor shall be released from future assessments for opening streets is void.
3. DEDICATION—STREETS.
   Where a landowner conveyed land to a city for streets, by a deed containing a condition that certain parcels of land retained by him should be exempt from assessments for opening streets, and afterward dedicated a plat showing the land conveyed as streets, and recognized his dedication by the sale of lots, the right of the public to the streets was established.
4. EQUITY—PRACTICE—BILL OF REVIEW—ANSWER—WAIVER.
   Answering to an original bill in the nature of a bill of review filed by a person not a party to the suit, waives the right to appeal from the order permitting such bill to be filed.

Appeal from Wayne; Donovan, J.   Submitted April 13, 1904.   (Docket No. 49.)   Decided July 16, 1904.

Bill by John W. Leggett against the city of Detroit to set aside a deed.   From a decree for complainant, defendant appeals; and from an order allowing Albert U. Widman to file a bill in the nature of a bill of review, complainant appeals.   Decree reversed, and appeal of complainant dismissed.

*Bowen, Douglas, Whiting & Murfin*, for complainant.

*Timothy E. Tarsney (John W. McGrath*, of counsel), for defendant.

*Corliss, Andrus, Leete & Joslyn*, for intervening petitioner.

_____
[1]Rehearing denied December 22, 1904.

HOOKER, J.  Virginia avenue, in Detroit, extends westerly from Woodward avenue. Complainant, Leggett, and others owned land extending from Woodward avenue to Hamilton Boulevard, and some years ago platted the same, calling the plat the "Peerless Addition." Virginia avenue was then in existence. The Peerless Addition lies upon both sides of it. At that time Second and Third avenues had not been opened as far north as Virginia avenue; some, if not all, of those streets, being opened only to a point some blocks south of Virginia avenue. Leggett and his associates made a deed of the lands belonging to them, which would be required for the purpose in case these streets should be extended through the proposed Peerless Addition, and sent it, with the following letter, to the common council:

" March 21st, 1903.

"TO THE HON. THE COMMON COUNCIL.

" *Gentlemen:* The undersigned herewith respectfully submit a deed of a strip of land for your street purposes and respectfully ask its acceptance by your honorable body.

[Signed]      " FRANK E. SNOW,
" JOHN W. LEGGETT,
" JOSEPH C. HOUGH,
" By B. W. WHITING,
" Their Attorney in Fact."

The matter was referred to a committee, and the deed, in a modified form, was subsequently accepted. This was a quitclaim deed of such land, and contained a statement that the remaining property—

" Shall forever be excluded from any and all assessment districts which may hereafter be made to defray the expenses of opening and condemning such portions of Crawford street, sometimes called Hamilton Boulevard, Second avenue, and Third avenue, or any or either of them, or extension or extensions thereof, as are not now opened. The condition of this deed being that if said last abovementioned described property is hereafter assessed or included in any assessment district for the purpose of defraying the expense of opening and condemning the now unopened portions of Crawford street, Second avenue, and

Third avenue, or extension or extensions thereof, or any or either of them, then and in that event, and on the happening thereof, the premises hereby conveyed shall each and all of them immediately and at once revert to and again become the property of the said first parties, their representatives or assigns, together with all and singular the hereditaments and appurtenances thereto belonging or in any wise appertaining. To have and to hold the said above-described premises to the said party of the second part, and to its successors, to the sole and only proper use, benefit, and behoof of the said party of the second part, and its successors, forever; subject to the restrictions above contained."

The deed was made in March, 1893, and is alleged to have described the premises subject to reversion, as the undivided one-third of the lands in dispute. Subsequently steps were taken by the city to open one or more of said streets, and, after buying the interests of his associates, Leggett filed the original bill in this cause. That bill prayed the reformation of the deed by striking out the words "one-third" in the description in the reversionary clause, and the conveying of the proposed opening of the street. A demurrer to this bill was filed upon the grounds (1) that the city had no authority to contract an exemption from a special assessment of this kind; (2) if made, it had no authority to perform such contract; (3) that the complainant was chargeable with laches. Upon hearing this demurrer was sustained. An amended bill was then filed. This bill prayed that the deed be set aside, and that complainant be decreed to be the owner of the land conveyed thereby. An answer was filed, and hearing had. The court decreed that the agreement was an unlawful one; that the deed conveyed no title to the city, which title still remained in complainant. This decree was dated January 12, 1903, and the calendar entries state that it was signed, filed, and entered on February 10, 1903, and that complainant's costs were taxed on April 3, 1903. On July 7, 1903, Albert U. Widman applied for leave to file a bill in the nature of a bill of review, claiming to be a purchaser from one Ferguson—who purchased from com-

plainant—of a lot fronting on Virginia avenue and Second avenue; that said lot would be seriously injured by the vacation of said Second street under said decree; and that the decree was erroneous. The petition alleged further that a new and confirmatory deed of the land was executed, delivered, and recorded, conveying the title of certain persons interested in said land to the city of Detroit, subsequent to the making of the assessment upon complainant's property for the opening of Second avenue, complained of in his bill. Other reasons were stated, which need not be set forth. This petition was heard and granted on July 14, 1903. On July 17th the city filed a claim of appeal from the decree, and on July 24th complainant filed a claim of appeal from the order allowing the bill of review to be filed, and on July 25th proof of service of notice of the last-mentioned claim of appeal was filed. August 11th case was settled and filed, and it was returned to this court on September 22d.

Counsel for complainant assert that the order permitting a bill in the nature of a bill of review to be filed was improper, for the reason that Widman was not a party to the original bill. On the other hand, petitioner's counsel maintain that a bill in the *nature* of a bill of review stands on a different footing from a bill of review, and may be filed, on leave granted, by one interested in and affected by the decree, although not a party to the suit. The principal questions in the case relate to the controversy between complainant and the city over the deed. This is a different case from that of *Coit* v. *City of Grand Rapids*, 115 Mich. 493 (73 N. W. 811). In that case the city contracted for land upon which to build an outlet for a sewer. In doing so it was not acting in the capacity of a State agency, but rather in its corporate capacity, for the benefit of its inhabitants, as contradistinguished from the public of the State at large. The giving of this deed was perhaps preliminary to the filing of a plat of the Peerless Addition, which plat shows Second and Third streets and Hamilton Boulevard as streets. This plat is not before us, but

it is stated that the plat "contains no reservation," and the dedication "describes the property platted by metes and bounds," and the street and avenues "as deeded and accepted by the common council." Our understanding is that this was recorded soon after the acceptance of the deed, though the bill states that it was platted on or about February 17, 1893, while the proof shows that the deed was accepted on April 4, 1893.

In the present case the most that can be claimed is that, in anticipation of a possible extension of certain streets, the council accepted a quitclaim deed of land contingently necessary upon a condition subsequent, to the effect that the land should revert if an assessment should be made against the grantors' land for the expense of any future opening of these streets to the north or south. It is not clear when the city then attempted to open these streets, but apparently it was several years after it accepted the deed. Meantime the complainant has sold lots by his plat to 15 or 16 persons. The evidence shows that this deed contains a condition, which, if performed, requires the city to exempt complainant's property from assessment for the specified purpose.

The case has been argued upon the theory that the city had attempted to make such an undertaking as the consideration for the deed. We have held that the right of eminent domain cannot be bartered away, and that contracts to do so by the legislature or any agencies of the State are ineffectual and void, as being against public policy. It was so held in *Re Opening of First Street,* 66 Mich. 42 (33 N. W. 15), where a city had promised a railroad company immunity from the opening of streets across its property. The case was discussed in *Woodmere Cemetery* v. *Roulo,* 104 Mich. 600 (62 N. W. 1010); *Wabash R. Co.* v. *Defiance,* 167 U. S. 102 (17 Sup. Ct. 748). We consider that proposition elementary, and do not cite other authorities. In the present case the city has not agreed that it will not take any of this particular property by virture of the power of eminent domain. It has, how-

ever, accepted a deed upon condition that, should it do so, it will omit this property from assessment districts, and will relieve it from contribution to the expense thereof. In the opening of streets a city acts as an agency of government. In that respect the case differs from the case of *Coit* v. *City of Grand Rapids*, 115 Mich. 502 (73 N. W. 811), where, as already said, it was providing for a sewer, which is a matter of municipal interest, rather than of general public or State interest. In performing the functions of such agency, it has no private or municipal interest, and it has no power except such as is prescribed. It is given no authority to say that a given parcel of land shall never be taken as a highway, nor has it authority to agree that some or all lands which would be benefited by the establishment of a highway shall have immunity from contribution. The statute requires it to establish an assessment district, which must include all lands benefited. It cannot do less. If it can agree to omit one parcel, it may omit many. It cannot determine in advance the amount of benefits chargeable to one or more such parcels, for the law says that is for a jury.

In this case it was necessary to take land through several blocks, paying adequate compensation. If such taking involved the removal of buildings, or the disturbing of large business interests, the damages would be correspondingly large, while the benefits thereto might be small. In such case such damages would necessarily be chargeable upon other lands in the assessment district, of which complainant's lands, consisting of many valuable lots, might form an important part. If they are exempt by reason of this alleged contract, the burden must of necessity fall with undue weight upon the remaining lands within the district. It would only be necessary to make enough such contracts to exempt the entire assessment district, thereby depriving the council of any power to condemn land, for want of a source from which to compensate the owners of the land to be condemned. Properly and lawfully dis-

tributing the burden is as much a part of the duty of the city as the exercise of the power of taking the property.

It is not clear that it could exercise the power at all if it can be said to have deprived itself of the power to make a statutory assessment district by absolving a considerable portion of the property actually benefited from liability to contribute. It may be that by deeding land this entire addition has been paid its full and just share of the cost of opening the street, but we cannot know this. Neither can the common council know it until the benefits have been determined in the method provided by law. The effect of action by the common council cannot be to deprive future councils of power in the premises. See *Wabash R. Co.* v. *Defiance,* 167 U. S. 100 (17 Sup. Ct. 752). It was there said:

"While municipalities, when authorized so to do, doubtless have the power to make certain contracts with respect to the use of their streets, which are obligatory upon them (*New Orleans Gas Co.* v. *Light Co.,* 115 U. S. 650 [6 Sup. Ct. 252]; *New Orleans Water-Works Co.* v. *Rivers,* 115 U. S. 674 [6 Sup. Ct. 273]; *City Railway Co.* v. *Railroad Co.,* 166 U. S. 557 [17 Sup. Ct. 653]; *City of Indianapolis* v. *Coke Co.,* 66 Ind. 396; *City of Indianapolis* v. *Trust Co.,* 140 Ind. 107 [39 N. E. 433]), the general rule to be extracted from the authorities is that the legislative power vested in municipal bodies is something which cannot be bartered away in such manner as to disable them from the performance of their public functions. These bodies exercise only such powers as are delegated to them by the sovereign legislative body of the State. Such powers, however, are personal to the municipalities themselves, and, being conferred for the benefit of the whole people, in the absence of authority to that effect, cannot be bestowed by contract, or otherwise, upon individuals or corporations in such manner as to be beyond revocation."

Another suggestion in this connection is this: We have learned that the legislature may exercise the power of eminent domain, although it shall have previously delegated it. If so, will it be claimed that this action of the council has deprived it of power in the premises to impose

the burden upon the property benefited. See *Woodmere Cemetery* v. *Roulo,* 104 Mich. 602 (62 N. W. 1010); *Township of Harrison* v. *Board of Sup'rs of School-craft Co.,* 117 Mich. 217 (75 N. W. 456). We are of the opinion that a contract such as is sought to be inferred from this condition is not within the authority conferred upon the city, and that the case is distinguishable from *Coit* v. *Grand Rapids,* supra, in the important particular mentioned; this city not, as in that case, acquiring property for its own (in a sense) private purposes.

It remains to inquire whether the public right is nevertheless forfeited by the failure of the city to comply with the condition which the grantor saw fit to insert in his deed. This was not a condition precedent, the performance of which was essential to the vesting of the title in the city in trust for the public. If it were, it would do no more than to make the deed void. In that event he, as well as others, was chargeable with notice of the fact, as he is presumed to know the law. The delivery of this deed was followed by the record of a plat, in which we understand that these streets were shown, and in which it was asserted that they had been deeded to and accepted by the city. This was a publication to the world of an intention to dedicate to the public these lands for streets—a purpose which we do not discover to be stated in the deed, nor fairly inferable from it. The evidence shows that complainant has recognized this dedication in his sales, and we think it effective to establish a public right. This view of the case renders it unnecessary to discuss other points, except to say that we think that complainant has no standing in this court in his attempted appeal from the order in the case of Widman. From the understanding that we get of it, that was an original bill in the nature of a bill of review, filed by leave of court. Answer was filed, and the case was at issue. If this was done before the appeal was attempted, the right was waived, if it would otherwise have existed. We think, however, that the order was not appealable. *Maxfield* v. *Freeman,* 39 Mich. 64;

*Beecher* v. *Rolling Mill Co.*, 40 Mich. 308; Jennison, Chancery Practice, 213.

The decree is reversed, and bill dismissed, with costs of both courts, as to the city.   The appeal is dismissed as to petitioner, Widman, with costs.

MOORE, C. J., and MONTGOMERY, J., concurred.   CARPENTER and GRANT, JJ., did not sit.