[No. 12622. Department Two. January 8, 1916.]

WASHINGTON WATER POWER COMPANY, *Appellant*, v. THE
CITY OF SPOKANE, *Respondent*.[1]

MUNICIPAL CORPORATIONS — STREETS — CONTRACT FOR EASEMENT —
"GRADING AND OPENING." A contract for an easement for a street in
consideration of the city's agreeing to refund any grade tax paid
by the abutting owner for "opening, grading or improving any part
of a street, excepting sidewalks," contemplates more than a mere
original opening for travel, which accordingly did not discharge the
obligation of the city; but entitles the owner to reimbursement for
assessments subsequently made for the establishment of a perma-
nent grade, such as embankments, cuts and fills.

SAME—"IMPROVEMENTS"—"PAVING." Such a contract does not
contemplate refunds for paving as an "improvement," where there
was but little paving in the city at the time the contract was made;
since "improvement" is a relative term, to be construed in conjunc-
tion with "opening" and "paving," and as incidental thereto.

SAME—POWERS—ACQUISITION OF LAND—PAYMENT—REFUNDS—EX-
EMPTION FROM ASSESSMENTS—ESTOPPEL. Under Rem. & Bal. Code,
§ 7507, subd. 6, authorizing a city of the first class to purchase pri-
vate property for public purposes, a city that did not at the time
have the right of eminent domain may purchase an easement for a
highway in consideration of agreeing to reimburse the owner by
the repayment of any assessments against abutting property for
opening, grading or improving the street; and after receiving the
benefits, the city is estopped to question the legality of the mode of
payment.

SAME—ACQUISITION OF LAND—PAYMENT—REFUNDS OF ASSESSMENT
—CONTRACTORS—COVENANTS—RIGHTS OF SUCCESSORS. Such a contract
inures to the benefit of the grantor's successors, especially where the
grantor covenanted that it would build all structures on its land (an
island) of fireproof materials and expressly extended the covenant
to its assigns, in return for which the city covenanted to build ap-
proaches to the island, making the latter covenant of special bene-
fit to the grantor and its assigns.

Appeal from a judgment of the superior court for Spo-
kane county, Kennan, J., entered May 20, 1914, upon the
verdict of a jury rendered in favor of the defendant by di-

[1]Reported in 154 Pac. 329.

rection of the court, in an action to recover an assessment paid under protest. Reversed.

. *Post, Avery & Higgins,* for appellant.

*H. M. Stephens,* for respondent.

Morris, C. J.—For a number of years prior to and on September 8, 1891, the Spokane Falls Water Power Company owned a small island, known as Havermale island, which lies between the channels of the Spokane river, in the city of Spokane. On the date mentioned, the company granted to the city an easement for the construction of Howard street across the island, the grantors retaining the fee to the land and other rights, which will be referred to as occasion arises. The particular covenant of the easement over which this controversy arises is as follows:

"And upon the further condition that the grantor herein shall be reimbursed by the city of Spokane, for any grade tax paid by it for opening, grading, or improving any part of said street, excepting sidewalks, and upon the further condition that when said highway is graded through the premises of the grantor, and any cut or fill is made necessary by the grading of said street, that the city, at its own expense, shall cause the land of the grantor abutting on said highway on the island between the second and third channels of the river from the south to be graded on an incline for a space of not more than one hundred (100) feet on each side so that it will be practicable for vehicles of all kinds to drive on and off the said highway along its entire length across said island, and also to build an approach on each side of the said highway on the third island when the highway crosses it, wide enough for vehicles of all kinds to drive on and off said highway by said approach on each side."

Soon after the giving of this deed, Howard street was opened across the island, the channels of the river were bridged, and the street was thrown open for traffic. It does not appear that an assessment district was ever created for the construction of the street across the island. Arthur

Jones, a member of the council at the time, testified that the cost of opening the street was probably included in the cost of building the bridges.   Other members of the council at that time testified that the street was open for heavy traffic, but no one testified how much grading or other improvement had been done.

This portion of Howard street apparently remained as originally opened until August 4, 1911, when the city passed ordinance No. C262, providing for its grading, paving, and other improvement, and directing that the cost of the improvement be assessed against the abutting property.   The abutting property had by this time, by various mesne conveyances, passed to the appellant, which made due exceptions to the confirmation of the assessment roll and demand that the assessment be canceled.   All these exceptions and demands having been disallowed and refused, the appellant paid the assessment under protest, and after a proper demand, brought this action to secure a reimbursement of the amount paid, basing its right on the covenant in the deed of 1891.

The trial court was of the opinion that the testimony established that there had been, when the street was opened, such an improvement as the parties to the deed contemplated, and that the covenant should not be construed to prevent the city from levying an assessment on the property for subsequent improvements.   The jury was accordingly directed to return a verdict for the city, and from the judgment of dismissal entered thereon, the Water Power Company has appealed.

Before inquiring into the power of the city to accept the easement and act under its provisions, we must first determine whether the city made, in 1891, all the improvements contemplated by the deed, or whether the covenant includes the improvement under consideration; for if the city, when it opened up the street, made all the improvements covered by the deed, then manifestly the appellant may not recover as-

sessments subsequently paid for improvements not within the contemplation of the parties at that time. The controlling language of the deed is as follows: "Any grade tax paid by it [the grantor] for opening, grading or improving any part of said street, excepting sidewalks." The city contends that it fully complied with the terms of the deed by the work done on Howard street at the time it was opened in 1891, and that for any further improvement subsequently made, it may assess and collect from the appellant without any liability to reimburse it therefor. We are of the opinion, however, that the improvement made in 1891 was not such as the deed contemplated. The term "grade" has been variously construed by the courts to include many forms of improvement, but we have found no instances where it has been held that a mere opening and preparation for travel, such as was apparently made in this case, fulfills an agreement to grade. In *Aldrich v. Board of Aldermen of Providence*, 12 R. I. 241, the court said:

"To grade a highway is to do more than simply prepare it for travel; for this may often be accomplished by slight superficial changes."

By the use of the two terms "opening" and "grading," the covenant in this deed evidently contemplated a permanent grade which would include everything necessary to establish the grade, such as embankments, cuts, and fills, and, on the authority of *Spokane v. Browne*, 8 Wash. 317, 36 Pac. 26, gutters and curbs. The deed also entitled the grantor to reimbursement for "improvements," which, the appellant contends, includes paving. While not strictly ambiguous, the term "improvement" has a wide range of meaning, and may or may not designate paving, depending on the sense in which it is used. As was said in *Wolff Chemical Co. v. Philadelphia*, 217 Pa. 215, 66 Atl. 344:

"The word 'improvement' is a relative term, and its meaning must be ascertained from the context, and the subject-matter of the instrument or writing in which it is used."

The evidence discloses that, at the time this easement was given, there was very little if any paving in Spokane, and construing the terms of the easement in the light of that condition, and in conjunction with the terms "opening" and "grading," it is a fair interpretation that paving was not contemplated by the use of the word "improvement." Had the parties contemplated paving, they could have easily so stated, and the omission of the word "paving" must indicate that the improvements contemplated were those incidental to the opening and grading. We conclude, therefore, that, if the city is liable on the contract, it is bound to reimburse the appellant for the assessment levied for the grading, but not for the paving proper.

The next question is whether the city had power to enter into the contract with the grantor to reimburse it for assessments, considering that the acceptance by the city of the deed subject to the covenant created a contract to reimburse the grantor as provided therein. The city contends that the agreement with the power company was an attempt to exempt the company from any assessment for improvement of the street, and cites the following cases in support of its contention that such exemptions are void: *Pittsburgh, C., C. & St. L. R. Co. v. Oglesby*, 165 Ind. 542, 76 N. E. 165; *Leggett v. Detroit*, 137 Mich. 247, 100 N. W. 566; *Whitcomb v. Boston*, 192 Mass. 211, 78 N. E. 407; *Vrana v. St. Louis*, 164 Mo. 146, 64 S. W. 180; *Rackliffe & Gibson v. Duncan*, 130 Mo. App. 695, 108 S. W. 1110; *Miners' Bank v. Clark*, 252 Mo. 20, 158 S. W. 597.

In the Indiana case the court said:

"Appellees maintain that the grant by the railroad company to the city of ground for use as a street was valid, but that the provision in the deed that the grantor and the remaining portions of the lot should not then or thereafter be charged with any expense connected with the extension or maintenance of that portion of such street was void. It has long been an established principle that private property may be appropriated for a highway when public necessity, con-

venience, or utility requires it. It is quite as essential that such highway be improved and kept in repair as that it be established in the first instance. It has been, and is, the theory of our law that the opening and improvement of a public highway will benefit the abutting and adjacent property, and that such property should be primarily and proportionately liable for the costs and damages occasioned thereby to the extent of such resulting benefits. This was the law in the year 1882, when the deed in question was executed, and it has continued to be the law to the present time. Conceding that the city of Rushville might purchase the title or an easement in land for use as a street, and obligate itself to pay a fair and reasonable compensation therefor, it does not follow that, as a part of the consideration, it could make a covenant or accept a condition that would annul a provision of its charter, and bind the discretionary judgment of future councils and governing bodies of the municipality. If, in consideration of the grant of such right, the city might lawfully release one man and his property from future liability for street improvements abutting such property, by the same right it might release all property within its jurisdiction, and thus make street improvements impossible, or subject an entirely different fund to the payment of the costs of such improvements from that provided by law. This provision of the contract was not only contrary to public policy, but in contravention of positive law. So far as the contract attempted to release appellant's property from liability for future improvements upon the abutting street, it was *ultra vires* and void. *Leggett v. City of Detroit* (1904), 137 Mich. 247, 100 N. W. 566; *Vrana v. City of St. Louis* (1901), 164 Mo. 146, 64 S. W. 180; *City of Shreveport v. Shreveport City R. Co.* (1901), 104 La. 260, 29 South. 129; Elliott, Roads and Sts. (2d ed.), § 148; *Richards v. City of Cincinnati* (1877), 31 Ohio St. 506; *City of Des Moines v. Hall* (1868), 24 Iowa 234, 241."

The substance of the decision in *Leggett v. Detroit* is contained in the following extracts:

"In the present case the most that can be claimed is that, in anticipation of a possible extension of certain streets, the council accepted a quitclaim deed of land contingently necessary upon a condition subsequent, to the effect that the

land should revert if an assessment should be made against the grantors' land for the expense of any future opening of these streets to the north or south. . . . The case has been argued upon the theory that the city had attempted to make such an undertaking as the consideration for the deed. We have held that the right of eminent domain cannot be bartered away, and that contracts to do so by the legislature or any agencies of the state are ineffectual and void, as being against public policy. . . . In the present case the city has not agreed that it will not take any of this particular property by virtue of the power of eminent domain. It has, however, accepted a deed, upon condition that, should it do so, it will omit this property from assessment districts, and will relieve it from contribution to the expense thereof."

It is apparent that the Michigan court held the contract void, on the ground that the consideration sought to be paid for the deed was a waiver by the city of the power of eminent domain, which could not be legally bartered away. In 1891, when the deed in this case was given, the city of Spokane did not have the power of eminent domain (*Tacoma v. State*, 4 Wash. 64, 29 Pac. 847), and the agreement to refund any assessment could not be construed as a waiver of that power. The Michigan case does not, therefore, appear to be applicable on the question here involved. Had the city of Spokane had the power of eminent domain in 1891, a different question would be presented, upon which we express no opinion.

In *Vrana v. St. Louis*, the court treated the contract as one exempting property from taxation, and relied upon *State v. Hannibal & St. J. R. Co.*, 75 Mo. 208, in holding the exemption beyond the power of the city to make. In that case the court said in part:

"The city was without power to agree to exempt the lots in Allen's Western Addition either from general taxes or special assessments, because no such power is vested in it by its charter and unless this power is granted it does not exist.

"This must now be regarded as settled law in this state. It was so ruled in *State v. Hannibal and St. Joe R. R. Co.*, 75 Mo. 208, as to an attempted exemption by the city of Han-

nibal as to municipal taxes in order to prevent a removal of the general offices and machine shops of the railroad company. The reasoning of Sherwood, C. J., in that case leaves nothing to be added and decides the principle involved in this case. The charter of St. Louis does not contain any such power of exemption. Beach, in his work on 'Public Corporations,' referring to *State v. H. & St. Joseph R. R., supra,* and many other authorities, state the result to be that 'a municipal corporation has no power to grant exemption from or a commutation of taxes, and a contract which undertakes to do so is void; nor can municipalities discriminate in favor of any property. The power to exempt is not included in the power to tax, but must be specifically conferred.' (2 Beach on Pub. Corp., sec. 1443.)

"'One of the prime governmental duties imposed upon the city of St. Louis is to provide reasonable highways for the public of said city, and as compensation for private property taken for public use is required to be made out of public funds only so far as the public generally is found benefited, and the remainder is required to be provided by local assessments against the private property especially benefited, the city would put it out of its power to perform its obligation if it were allowed to exempt private property from such assessments. If it could exempt one man's property, it might exempt a dozen, and thus it might find itself unable to find property sufficient and not exempted out of which to pay for necessary improvements, or be driven to taxing a part of the property-owners far in excess of any fair benefit to their property, a practice not to be countenanced. Judge Elliott, in his admirable treatise on Roads and Streets, lays it down that: 'Where a statute provides generally for the assessment of lands for the cost of improving a road or street, it authorizes an assessment upon all lands within the limits designated, although some of the property may be exempt from taxation. A statute exempting property from taxation does not exempt it from an assessment for a local improvement. It may, indeed, be doubted whether a statute exempting from local assessment property appropriated to specific uses would be valid, since the exemption of one or more parcels would increase the burdens of others owning property along the line of the highway, and this would produce an inequality against

which in many of the states constitutional provisions are directed.' (Elliott on Roads and Streets (2d ed.), sec. 549.)

"So that even if the city had made an express agreement with Thomas Allen to exempt the lots in said addition from future assessments for necessary public purposes, it would have been a void undertaking on its part, of which he was bound to have notice. In *St. Louis v. Meier*, 77 Mo. 13, this court said: 'Kingsland must be supposed to have known that he could not legally make, and that the city could not legally accept, a dedication made by him upon condition that when the city should condemn the land to the north and south of him he should not be assessed with benefits. Whether he would be liable to be assessed with benefits would depend upon the provisions of the city charter, and not upon the agreement of the parties. Besides, the owners of the land north and south of him could not, by any arrangement between him and the city, be made to bear any portion of the tax for benefits which would otherwise be chargeable against his property.' "

*Rackliffe & Gibson v. Duncan* followed the *Vrana* case on the same theory, but in *Miners' Bank v. Clark*, the court decided squarely that, even as a purchase of the easement, the method adopted was void. The material portion of that opinion follows:

"Appellant contends that by reason of the condition contained in the quit-claim deed from Clark to the city, dated June 21, 1901, the city had no right to improve said street at the expense of Clark, and that said deed being of record the contractor was charged with notice thereof, and the tax bills are therefore void. The determination of the proposition turns upon the answer to the following question: Did the city, by accepting the deed from Clark in 1901, contract away its right to later order said street improved at the expense of the abutting property owner, even though the grantor in said deed be the property owner when the improvement is later made? Unless the law constituting its charter gives such right, a city cannot contract away its right and power to levy special assessments for street improvements, and thereby create an exemption from such assessments. (*Vrana v. City of St. Louis*, 164 Mo. 146, where the exemption was attempted in the dedication; *Rackliffe & Gib-*

*son v. Duncan,* 130 Mo. App. 695, where the exemption was attempted in the deed conveying the street to the city.)    The charter of cities of the third class does not give such power. In fact, the legislative right to give such power might well be doubted—a point, however, which we do not decide.

"It is true, as asserted by appellant, that a city of the third class may acquire title to land for street purposes; but we know of no rule which authorizes the city to surrender, as the purchase price of a street, its right to order that street improved in any manner authorized by law."

The rule announced in Missouri has thus grown from the decision in *State v. Hannibal & St. J. R. Co.,* which was, as stated in *Vrana v. St. Louis,* an attempted exemption from municipal taxes.    Prior to *Miners' Bank v. Clark,* the Missouri courts had considered the undertaking by the city only as an exemption, and not as consideration for a purchase of the property.    In *Miners' Bank v. Clark,* the legality of the agreement as a purchase price was evidently not seriously considered.    There appears to us to be a wide distinction between an exemption from taxes, such as was under consideration in the *Hannibal* case, and an agreement to refund assessments as the purchase price of an easement, a distinction which the Missouri courts did not consider; and we cannot avoid the conclusion that the later Missouri cases are decided on the basis of a case differing radically in principle from the question then before the courts.    The Indiana case, being founded on the Michigan and the Missouri cases, likewise failed to note the distinction.

We may concede that the city's contention that it was without authority to enter into this contract is supported by some show of authority.    The cases are, however, as we have shown, decided on what appears to us to be an erroneous application of the fundamental principle that exemptions from taxes are void.    The cases of *Perth Amboy Trust Co. v. Board of Aldermen etc.,* 75 N. J. L. 291, 68 Atl. 84, and *Omaha v. Megeath,* 46 Neb. 502, 64 N. W. 1091, although apparently decided without notice of the contrary rule, es-

tablish what seems to us to be the more equitable doctrine. In the *Perth Amboy* case, the court says:

"The excuse of the city for levying the assessment in question in the face of the condition of dedication which it had accepted is that it had no power to accede to the condition upon which the land for Sheridan street was given by its owners to the public. The claim of the city is that the dedication should stand, but that the condition upon which it was made should be ignored. We cannot take this view of the legal situation. The condition, so far as it affected Sheridan street, being limited to a single expenditure for a specific purpose, was in effect the price the city was willing to pay for the land. If the city had power to buy the land at such sum, it had power to agree to expend such sum upon the land as the condition of its perpetual dedication to public uses. After the expenditure of the sum thus required the public have no more standing to exact payment from the abutting owners than the owners have to exact damages from the public for taking the land. Dillon, Mun. Corp. (3d ed.); § 632, and cases cited in the notes."

The substance of *Omaha v. Megeath* is well stated in the syllabus:

"Where a strip of ground surrounding a tract of land designed for a public park was conveyed by parties who owned other land outside of and abutting upon the said strip upon the express conditions in the deed of conveyance, that the grantee should lay out and improve said strip as a street and forever after keep the same in good repair and order at its own expense, such city, for improving or keeping in repair such street, cannot require payment by its grantor because of their ownership of the aforesaid abutting property, and the same exemption from liability exists in favor of one who has since purchased a part of said abutting property."

Under Laws of 1889-90, p. 219, § 5, subd. 6 (Rem. & Bal. Code, § 7507; P. C. 77 § 83), the city of Spokane had power to purchase private property for corporate purposes, and we see no evil in making the compensation to be paid dependent on a future contingency. The city has accepted the benefits from the deed and is seeking to escape the burdens. As

stated by Mr. Justice Strong in *Hitchcock v. Galveston*, 96 U. S. 341, the city "having received benefits at the expense of the other contracting party, it cannot object that it was not empowered to perform what it promised in return, in the mode in which it promised to perform." At the time this deed was accepted, the city of Spokane had no power to condemn the property. *Tacoma v. State*, 4 Wash. 64, 29 Pac. 847. The only power of acquisition besides an unrestricted dedication was that of purchase, and having entered into a contract which it had power to make and received the benefits, the city should now be estopped to question the legality of the mode of payment. In reaching this conclusion, we have not lost sight of our decisions in *Arnott v. Spokane*, 6 Wash. 442, 33 Pac. 1063; *State v. Pullman*, 23 Wash. 583, 63 Pac. 265, 83 Am. St. 836; and *Turner Inv. Co. v. Seattle*, 70 Wash. 201, 126 Pac. 426, 41 L. R. A. (N. S.) 781. In those cases the contracts were entirely *ultra vires* and void, whereas here, the most that can be said is that the mode of payment provided for was not specifically authorized.

The only remaining objection to a reimbursement by the city is the contention that the covenant was enforceable, if at all, only by the grantor and not by its successors. In *City of Omaha v. Megeath, supra*, the court allowed the successors of the grantor the benefits of the covenant as a matter of course. In this case, there is an added reason found in the deed itself for holding that the right to reimbursement passed to the successors of the grantor. The grantor covenants that it would build all structures in the river of fireproof material, and this covenant was expressly extended to its assigns. The city also covenanted that it would make certain approaches from the abutting land to the street. This latter covenant clearly could benefit only the owner of the land when the street was graded, and it would be unconscionable to hold the grantor to the covenant on its part and allow the city to escape liability because the title to the land had passed from the grantor to other persons. The judgment is reversed,

and the cause remanded with directions to the trial court to enter judgment for the appellant for that portion of the assessment paid by it for the embankment, retaining wall, curbs and curb armor, catch basins and drain pipe, together with such portion of the cost of incidentals, engineering, and superintendency as entered into the grading complete with curbs and gutters.

FULLERTON, MAIN, and ELLIS, JJ., concur.